PIZZUTO, J.T.C.
This ease presents the question of whether New Jersey may constitutionally subject a foreign corporation to the Corporation Business Tax (N.J.S.A. 54:10A-1 et seq., “the CBT”), where the corporation has no physical presence in the state and derives income from a New Jersey source only pursuant to a license agreement with another corporation that conducts a retail business here.
Plaintiff Lanco, Inc., (“Lanco”) is a Delaware corporation that owns certain intangible property (trademarks, trade names and service marks). The parties have stipulated that Lanco has no offices, employees, or real or tangible property in New Jersey. Lanco licenses Lane Bryant, Inc., (“Lane Bryant”) to utilize the intangible property in the conduct of Lane Bryant’s retail operations, including those in New Jersey, and in return receives royalty payments from Lane Bryant. Lanco and Lane Bryant are affiliated corporations, but the common ownership is not material to the constitutional issue concerning the determination by the defendant, Director of the Division of Taxation (“Director”), that activity under the license agreement makes Lanco subject to taxation in New Jersey. It is the determination that Lanco is obliged to file under the CBT, rather than the calculation of tax claimed to be due, that is contested.[1]
*204 State taxation of entities engaged in interstate commerce must comport with the Due Process and Commerce Clauses of the United States Constitution. In the leading case of Complete Auto Transit v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), the Supreme Court articulated the standard to determine whether, in the absence of Congressional action (when the clause is considered “dormant”), a particular instance of state taxation of interstate commerce is permitted under the Commerce Clause. U.S. Const. art. I, § 8, cl. 3. The Court formulated a four-part test that permits taxation “when the tax is applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State.” 430 U.S. at 279, 97 S.Ct. 1076.
Until the decision in Quill Corp. v. North Dakota, 504 U.S. 298, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992), it was generally considered that the requirement of the Due Process Clause, U.S. Const. Amend. XIV, § 1, that an entity have certain minimum contacts with a taxing jurisdiction to support the imposition of a tax was not different from the substantial nexus component of the Commerce Clause standard. In Quill, however, the Supreme Court uncoupled the Due Process Clause analysis from the nexus test under the Commerce Clause. Quill concerned the use tax collection obligation[2] of a mail-order vendor of office supplies that had *205 no retail outlets or sales force in North Dakota and that shipped its products into that state by common carrier. The Court addressed the continuing vitality of its decision in National Bellas Hess Inc. v. Department of Revenue of Ill., 386 U.S. 753, 87 S.Ct. 1389, 18 L.Ed.2d 505 (1967), which had held that a mail-order vendor may not constitutionally be required to collect from its customers a use tax imposed by the state within which its product is delivered, unless the vendor has a physical presence, more than de minimis, in that state. The presence may be associated with activities totally unrelated to the sale. Thus, the presence of offices handling advertisements in a publication will support the imposition of a use tax collection responsibility for items sold by the publisher. National Geographic Soc. v. California Bd. of Equalization, 430 U.S. 551, 97 S.Ct. 1386, 51 L.Ed.2d 631 (1977). Moreover, the physical presence requirement may be satisfied by independent contractors who solicit sales, assist retailers or service the product sold. See Scripto, Inc. v. Carson, 362 U.S. 207, 80 S.Ct. 619, 4 L.Ed.2d. 660 (1960).
Quill determined that the Bellas Hess result remained sound, but as a matter of Commerce Clause jurisprudence only and not as a requirement of the Due Process Clause. Recognizing that a quarter-century of adjudication since Bellas Hess had produced a conception of due process in terms of minimum contacts, reasonable notice and basic fairness, the court concluded that North Dakota’s assertion of an obligation on the part of Quill to collect use tax comported with due process. The majority (Justice Stevens joined by Chief Justice Rehnquist and Justices Blackmun, O’Connor and Souter) found, however, that the Commerce Clause requirement of substantial nexus embodied other constitutional considerations:
Due process centrally concerns the fundamental fairness of governmental activity. Thus, at the most general level, the due process nexus analysis requires that we ask whether an individual’s connections with a State are substantial enough to legitimate the State’s exercise of power over him. We have, therefore, often identified “notice” or “fair warning” as the analytic touchstone of due process nexus *206 analysis. In contrast, the Commerce Clause and its nexus requirement are informed not so much by concerns about fairness for the individual defendant as by structural concerns about the effects of state regulation on the national economy. Under the Articles of Confederation, state taxes and duties hindered and suppressed interstate commerce; the Framers intended the Commerce Clause as a cure for these structural ills.
Thus, the “substantial nexus” requirement is not, like due process’ “minimum contacts” requirement, a proxy for notice, but rather a means for limiting state burdens on interstate commerce. Accordingly, contrary to the State’s suggestion, a corporation may have the “minimum contacts” with a taxing State as required by the Due Process Clause, and yet lack the “substantial nexus” with that State as required by the Commerce Clause. [504 U.S. at 312-13, 112 S.Ct. 1904.]
The determination that physical presence remains a requirement under the Commerce Clause for the imposition of a use tax collection responsibility rests to a significant extent on stare decisis principles. The majority opinion observed that “the Bellas Hess rule has engendered substantial reliance and has become part of the basic framework of a sizable industry.” 504 U.S. at 317, 112 S.Ct. 1904. Moreover, it noted that the “underlying issue is not only one that Congress may be better qualified to resolve, but also one that Congress has the ultimate power to resolve.” Id. at 318, 112 S.Ct. 1904 (footnote omitted). Nevertheless, the decision does not simply reflect deference to precedent and recognition of Congressional authority. The majority clearly undertook an analysis of the physical presence requirement on its own merits. It concluded “[w]hile contemporary Commerce Clause jurisprudence might not dictate the same result were the issue to arise for the first time today, Bellas Hess is not inconsistent with Complete Auto and our recent cases.” Id. at 311, 112 S.Ct. 1904.
The opinions of the other Justices underscore that the majority found continuing value in the requirement of physical presence for constitutional exercise of State taxing power under the Commerce Clause. Justice White concurred with the majority’s due process analysis and would have applied the same standard for the substantial nexus inquiry under the Commerce Clause. He would have overruled Bellas Hess and given it “the complete burial it justly deserves.” Id. at 322,112 S.Ct. 1904 (White, J., concurring in part, dissenting in part). Justice Sealia, joined by Justices *207 Kennedy and Thomas, concurred in the result, but expressly noted that he “would not revisit the merits of that holding, but would adhere to it on the basis of stare decisis.” Id. at 320, 112 S.Ct. 1904 (Scalia, J., concurring).
The decisive question in this case is whether the physical presence requirement confirmed in Quill under the Commerce Clause applies simply to the use tax collection obligation directly at issue in that case, or whether it is also a necessary element of substantial nexus for the imposition of a state income or franchise tax. The Quill majority opinion does not give an unambiguous answer to this question. In at least two places, the opinion observes that in cases concerning other types of taxes the Supreme Court has not articulated a physical presence requirement. 504 U.S. at 314, 317, 112 S.Ct. 1904. The opinion acknowledges, however, that the Commerce Clause precedents considered by the North Dakota Supreme Court in sustaining a collection obligation for Quill involved businesses that were physically present in the taxing state. Id. at 314, 112 S.Ct. 1904. Those cases were therefore, the court noted, consistent with Bellas Hess.
This question has been addressed both in litigation and in academic discussion subsequent to Quill. The earliest decision of a state court of last resort is Geoffrey, Inc. v. South Carolina Tax Comm’n, 313 S.C. 15, 437 S.E.2d 13 (1993), cert. denied 510 U.S. 992, 114 S.Ct. 550, 126 L. Ed.2d 451 (1993). The Geoffrey fact pattern is materially indistinguishable from this case. Geoffrey, Inc., a wholly owned subsidiary of Toys R Us, Inc., was a Delaware corporation without property or employees in South Carolina. It owned trademarks and trade names that it licensed Toys R Us to use in that state. Toys R Us made royalty payments to Geoffrey and deducted those payments from income in determining its South Carolina income tax obligation. The South Carolina tax authorities initially disallowed the deduction, but eventually contended that Geoffrey was independently subject to taxation, notwithstanding that Geoffrey had no physical presence in the state. The South Carolina Supreme Court sustained this contention, commenting in the course of its decision that “[t]he net effect of this corporate structure has been the produc *208 tion of ‘nowhere’ income that escapes all state income taxation.” 437 S.E.2d at 15, n. 1.
The thesis that Geoffrey is correctly decided is comprehensively developed in two articles by Michael T. Fatale, a tax attorney with the Massachusetts Department of Revenue: Geoffrey Sidesteps Quill: Constitutional Nexus, Intangible Property and the State Taxation of Income, 23 Hofstra L.Rev. 407 (1994) and State Tax Jurisdiction and the Mythical “Physical Presence” Constitutional Standard, 54 Tax Law 105 (2000). The interpretation of Quill adopted in Geoffrey and advanced by the cited articles is a necessary component of the Director’s argument in this case. It considers that Quill merely establishes a safe harbor with respect to the use tax collection obligation for vendors that do not have a physical presence in a state where their products are delivered. In other words, if a vendor does no more than solicit orders from outside the state and ship goods into the state by mail or common carrier, the vendor is not obliged to collect the state’s use tax from its customers. Where the issue is not use tax collection, but liability for state taxation of income, it is argued that Quill permits a finding of liability by virtue of an intentional exploitation of the state’s market without physical presence in the state.
This argument is not persuasive. In the first place, it does not appear that the differences between the use tax collection obligation, on the one hand, and liability for income taxation, on the other, are so significant as to justify a different rule for each concerning physical presence as an element of Commerce Clause nexus. Next, the Supreme Court eases decided before Quill strongly suggest that physical presence is a necessary element of nexus for income taxation. Finally, other state court cases decided since Quill do not follow the Geoffrey rule.
As noted previously, the Supreme Court’s decision in Quill to retain the physical presence requirement rested on more than the principles of stare decisis and the mail-order industry’s reliance on the Bellas Hess rule. The Court spoke of the “benefits of a clear rule... [that] firmly establishes the boundaries of legitimate state authority to impose a duty to collect sales and use taxes and *209 reduces litigation concerning those taxes.” 504 U.S. at 315, 112 S.Ct. 1904. It is difficult to see distinctions that give virtue to physical presence as a necessary element of nexus in this area and not for purposes of income taxation. The Quill majority noted the discussion in Bellas Hess that potential imposition of sales taxes by more than 6000 jurisdictions raised a prospect of “many variations in rates of tax, in allowable exemptions and in administrative and record-keeping requirements” and “a welter of complicated obligations.” 504 U.S. at 313, n. 6, 112 S.Ct. 1904, quoting Bellas Hess, supra, 386 U.S. at 759-60, 87 S.Ct. 1389. Even on the supposition that these complexities characterize use tax collection more than income tax liability, the record-keeping and classification tasks, considered complicated and onerous in 1967 when Bellas Hess was decided, are considerably less difficult under contemporary data-processing technology. See Quill, supra, 504 U.S. at 332, 112 S.Ct. 1904 (White, J., concurring in part, dissenting in part). The use tax collection obligation does not, to put it plainly, seem significantly more burdensome than the liability to pay an income tax. If physical presence is a constitutional necessity for one, it is illogical that it should not be for both.
The conclusion that physical presence is necessary to support state taxation of income is fully consistent with and strongly suggested by the Commerce Clause cases decided before Quill. Complete Auto establishes a standard that can fairly be called a balancing test. It does not articulate the nexus component of the test in terms of physical presence, or any particular bright-line requirement. Nevertheless, the nexus question by its very nature is analyzed in terms of objective factors like presence. The Quill majority, moreover, noted that the precedents cited by the North Dakota Supreme Court concerned taxpayers physically present in the taxing state. In the use tax context, Quill establishes that physical presence, when coupled with the filling of orders from out-of-state, tips the balance in favor of the collection obligation. With respect to income taxation, the question seems to be the sufficiency of other factors beyond physical presence, which is taken as a given, to establish taxing jurisdiction.
*210 In propounding the thesis that Commerce Clause nexus does not require some element of physical presence, the articles cited above acknowledge the absence of precedent at the Supreme Court level sustaining imposition of an income tax on an entity without tangible property or other physical presence in the taxing jurisdiction. The earlier article approvingly analyzes the Geoffrey decision and argues for wide application of its reasoning. It proposes that the business-situs rule may be invoked to establish nexus for taxation on the basis of the use of intangible property in the taxing state. The business-situs rule, applied in several cases decided nearly a century ago, permits intangibles to be assigned a tax situs in a state where the owner is not physically present. The cases concerned ad valorem property taxation, and the issue was due process. The article claims support from only one income tax case decided by the United States Supreme Court, New York ex. rel. Whitney v. Graves, 299 U.S. 366, 57 S.Ct. 237, 81 L.Ed. 285 (1937). Whitney is also a due process case, in which New York was found to have jurisdiction to tax a Massachusetts resident on income from the sale of a right derived from a seat on the New York Stock Exchange.
The second article defends the proposition that the Quill requirement of physical presence applies only in the use tax collection context and discusses state court litigation subsequent to Quill. It demonstrates that there has been considerable activity, especially since the decision in Geoffrey. Nevertheless, South Carolina remains the only state which has found- nexus without physical presence. The Geoffrey holding, of course, is binding precedent only in South Carolina. The Supreme Court’s denial of certiorari does not address the merits of the decision. Hughes Tool Co. v. Trans World Airlines, Inc., 409 U.S. 363, 365, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973). See also Ponte v. Real, 471 U.S. 491, 502, 105 S.Ct. 2192, 85 L.Ed.2d 553 (1985) (Stevens, J., concurring in part). In its discussion of the Commerce Clause, Geoffrey recites the four-part test of Complete Auto. Then, the opinion summarily concludes, in a footnote, that in Quill the Supreme Court “revisited the physical presence requirement of Bellas Hess and, while reaffirming its validity as to sales and use taxes, noted *211 that the physical presence requirement had not been extended to other types of taxes.” 437 S.E.2d at 18, n. 4. The opinion goes on to declare that “[i]t is well settled that the taxpayer need not have a tangible, physical presence in a state for income to be taxable there. The presence of intangible property alone is sufficient to establish nexus.” Ibid. In support of the proposition, it cites a New Mexico state court decision and the U.S. Supreme Court decision in International Harvester Co. v. Wisconsin Dep’t of Taxation, 322 U.S. 435, 441-42, 64 S.Ct. 1060, 88 L.Ed. 1373 (1944).
The International Harvester decision concerned a due process challenge by a foreign corporation doing business in Wisconsin to a state statute imposing a tax on that portion of dividends distributed by both domestic and foreign corporations as was derived from income earned in Wisconsin. The tax was imposed on the corporation, which was required to deduct the amount of the imposition from the dividends distributed to individual shareholders, who thus bore the burden of the tax. The Supreme Court upheld the tax, concluding that “a state has constitutional power to make a levy upon a corporation, measured by so much of its earnings from within the state as it distributes in dividends, and to make the taxable event the corporation’s relinquishment of the earnings to its stockholders.” 322 U.S. at 441, 64 S.Ct. 1060. In these circumstances, the Court declared “[p]ersonal presence within the state of the stockholder-taxpayers is not essential to the constitutional levy of a tax taken out of so much of the corporation’s Wisconsin earnings as is distributed to them.” Ibid. The broad proposition which Geoffrey takes from International Harvester that “a state may tax such part of the income of a nonresident as is fairly attributable either to property located in the state or to events or transactions which, occurring there, are within the protection of the state and entitled to the numerous other benefits which it [ ] confers” is in the nature of dictum. 437 S.E.2d at 18.
The only other decision cited in the Commerce Clause section of Geoffrey is Curry v. McCanless, 307 U.S. 357, 59 S.Ct. 900, 83 L.Ed. 1339 (1939). This case concluded that due process permits *212 an inheritance or succession tax to be imposed, with respect to a decedent’s disposition of intangible assets held in trust, by both the decedent’s state of domicile and the state where the trustee is found. Neither Curry v. McCanless nor International Harvester directly addressed the Commerce Clause and in each case physical presence, in the one instance of the trustee and in the other of the corporation, was an essential factor in the finding of jurisdiction to tax. The authorities cited by the South Carolina Court do not support its conclusion that Commerce Clause nexus may be found absent physical presence ascribable to a taxpayer.
The question of the necessity of physical presence for Commerce Clause nexus has been addressed in other state court decisions after Quill and Geoffrey. None of them find nexus absent physical presence. J.C. Penney Nat’l Bank v. Johnson, 19 S.W.3d 831 (Tenn.Ct.App.1999), cert. denied, 531 U.S. 927, 121 S.Ct. 305, 148 L.Ed.2d 245 (2000), moreover, clearly rejects the reasoning of Geoffrey. The Tennessee court concluded that income realized by a Delaware banking corporation from credit card activity in Tennessee was not subject to Tennessee’s franchise and excise taxes. The court observed that it could find no basis to differentiate between the use collection obligation addressed in Quill and the taxes imposed by Tennessee. Without specifically addressing Geoffrey, the decision found that under Quill physical presence is necessary for a finding of Commerce Clause nexus.
In another case, on facts like those in Geoffrey and the instant matter, the Maryland Court of Appeals reversed the holding of the Maryland Tax Court that a Delaware corporation, affiliated with a local retailer, is not subject to taxation where its only contact with Maryland is a license agreement with the retailer. Comptroller of the Treasury v. SYL Inc., 375 Md. 78, 825 A.2d 399 (2003). In doing so, the Court did not find that the license of intangible property for use within a state, without more, establishes Commerce Clause nexus for taxation of the licensor by the state within which the property is used. Rather, it concluded that the licensing corporation had no economic substance as a separate business entity, apart from the licensee. Although the court cited Geoffrey favorably, it also invoked the decision in Syms Corp. v. Commis *213 sioner of Revenue, 436 Mass. 505, 765 N.E.2d 758 (2002), in which the deduction of royalty payments to an affiliated corporation was disallowed in the computation of a retailer’s taxable income because the payments resulted from a “sham transaction.” The Maryland decision is not, therefore, an unqualified adoption of Geoffrey, and it does not support the Division’s contention in this matter.
Other decisions taking note of Geoffrey do not directly address the question of whether physical presence is required to establish nexus. Truck Renting & Leasing Ass’n, Inc. v. Commissioner of Revenue, 433 Mass. 733, 746 N.E.2d 143 (2001), sustains the imposition of the Massachusetts corporate excise tax to a foreign corporation that entered into lease agreements under which its trucks were operated in Massachusetts by the lessees. Although the issue of nexus without physical presence is noted in passing, the decision turns on the anticipated presence and use of the lessor’s tangible property in the state. Couchot v. State Lottery Comm’n., 74 Ohio St.3d 417, 659 N.E.2d 1225 (1996), holds a nonresident liable for state income tax on Ohio lottery winnings. Citing Geoffrey, the court considered that the physical presence requirement of Quill was inapplicable in the case. Nevertheless, the decision notes that the taxpayer was physically present in Ohio in both purchasing and redeeming the winning lottery ticket. General Motors Corp. v. City of Seattle, 107 Wash.App. 42, 25 P.3d 1022 (2001) rev. den. 145 Wash.2d 1014, 84 P.3d 1230, cert. denied 535 U.S. 1056, 122 S.Ct. 1915, 152 L.Ed.2d 825 (2002), concerns a local business and occupation tax, to which General Motors and Chrysler Corporations were found subject because, among other factors, their sales, service and parts representatives made regular visits to Seattle dealerships. In its discussion of Quill and Geoffrey, the court distinguished the tax at issue from both sales and use taxes and corporate franchise taxes and concluded that “[w]e decline to extend Quill’s physical presence requirement in this context.” 25 P.3d at 1029. It is clear, however, that the automobile manufacturers had a physical presence in the taxing jurisdiction. Finally, in Acme Royalty Co. v. Director of Revenue, 96 S.W.3d 72 (Mo.2002) the Missouri Su *214 preme Court, in a 4-3 decision interpreting state law, found that the state’s corporate income tax statute did not reach income received by foreign corporations from licenses of trademarks, trade names and patents to related corporations operating in Missouri. The dissenting judges, invoking Geoffrey with respect to federal constitutional questions, would have found the corporations subject to tax.
This analysis leads to the conclusion that the physical presence of the taxpayer or its employee(s), agent(s), or tangible property in a jurisdiction has been and remains a necessary element for a finding of substantial nexus under the Commerce Clause of the United States Constitution. This constitutional issue must be reached, although Lanco advances an alternative argument that subjecting it to tax on the basis of its license agreement with Lane Bryant is not consistent with the terms of the New Jersey Corporation Business Tax Act (N.J.S.A. 54:10-A et seq.) The statutory argument fails because the CBT statute is clearly intended to reach foreign corporations engaged in business activities within the state to the full extent that is constitutionally permissible. Roadway Express, Inc. v. Director, Div. of Taxation, 50 N.J. 471, 483, 236 A.2d 577 (1967) appeal dismissed, 390 U.S. 745, 88 S.Ct. 1443, 20 L.Ed.2d 276 (1968).
The dispositive conclusion under the Commerce Clause also renders unnecessary extended discussion of other questions presented and expert testimony produced. Some discussion of those matters, however, is useful for an understanding of this decision. Lanco has argued, in particular, that not only the Commerce Clause, but also the Due Process Clause, immunizes it from taxation in New Jersey. Yet it is impossible to conclude that its agreement with Lane Bryant does not satisfy the Quill due process standard in that Lanco has purposefully availed itself of the benefits of an economic market in New Jersey. See Quill, 504 U.S. at 307-08, 112 S.Ct. 1904. Similarly, any contention that other elements of the four-part Complete Auto test are not satisfied is without merit. Since this case concerns not an assessment, but a determination of responsibility to file, the fair appor *215 tionment element of the Complete Auto test is not raised as an issue. The remaining elements concern discrimination and fair relation to benefits provided by the state. It is beyond question that the state seeks to tax license income of both domestic and foreign corporations and among the latter class to tax both those physically present and those not. There is simply no distinction made upon which a discrimination claim can be founded. As to fair relationship to services, it is clear that Lanco’s intangibles are utilized in the conduct of Lane Bryant’s retail business. Although it is not physically present in the state, Lanco clearly enjoys the same benefits provided to Lane Bryant.
Both parties presented testimony of economic experts. David Wildasin, Professor of Economics at Vanderbilt University testified as part of plaintiffs case. He concluded that it is undesirable on economic grounds for states to tax the income of corporations that have no physical presence in the taxing state. He considered it important that states have revenue mechanisms enabling them to tax entities that impose costs on the states to provide public services. In Wildasin’s view, businesses that are physically present impose such costs, while those without physical presence do not. A licensor of intangibles like Lanco receives, the expert acknowledged, an indirect benefit from the state in which its licensee conducts business, but that benefit does not support taxation. Taxation based upon indirect benefit, in his opinion, would produce adverse consequences in the form of multiple taxation, discouragement of commerce, export of tax burden, and potentially disparate taxation of separate economic sectors; while taxation based on physical presence would have no adverse consequences.
Defendant presented the testimony of James Kearl, Professor of Economics at Brigham Young University. He observed that there is no necessary relationship between the magnitude of the costs imposed on a state by a given taxpayer’s activity in the state and the amount of revenue collected from that taxpayer. He considered that Lanco’s licensure of intangibles for use in New Jersey imposes costs on the state because it generates economic activity that increases the demand for public services; and he further *216 considered that Lanco benefits from this activity, since it receives fees that increase with sales. Kearl concluded that the imposition of a corporate income tax on a licensor like Lanco is warranted by economic factors and that it would produce no substantial distortions of economic behavior. He regarded broadening the tax base to include entities without physical presence in the state as permitting the lowering of the tax rate and the reduction of the overall impact of the corporation tax on economic incentives and behavior.
Plaintiff also offered the testimony of Richard D. Pomp, Professor of Law at the University of Connecticut. Pomp is one of the leading academic authorities in state and local taxation and was qualified as an expert in tax policy. As such, he enumerated six principles of tax policy that he regarded as representing the values inherent in the commerce clause: desirability of a clear or “bright-line” test, consistency with settled expectations, reduction of litigation and promotion of interstate investment, non-discriminatory treatment of the service sector, avoidance of multiple taxation, and efficiency of administration. He concluded that a requirement for physical presence as an element of Commerce Clause nexus advances each of these principles to a greater extent than a rule establishing nexus on the basis of use of intangible property. Pomp also found no reason to distinguish between the use tax collection obligation, directly involved in Quill, and the obligation to pay the corporate tax at issue here in terms of considerations relating to nexus. Finally, he described how the method of combined reporting for corporate taxation would permit taxation of income received by a foreign corporation for use of intangible property in the taxing state by a related corporation, even under a nexus rule requiring physical presence, and he endorsed combined reporting as sound tax policy.[3]
*217 Economic and tax policy considerations are unquestionably valid material for the Supreme Court to consider in its task of constitutional adjudication. Those considerations are also appropriately addressed by the Legislature when it formulates the statutory scheme of taxation. Expert testimony does not, however, bear upon the question of whether the requirement of physical presence for Commerce Clause nexus is, following Quill, applicable beyond the use tax collection situation. That is a question of the interpretation of case law. Once it is determined that the precedents continue to require physical presence for nexus, there is no further question in this case for expert testimony to address.
A question of retroactivity has also been raised in the amicus curiae brief filed by the New Jersey Chamber of Commerce. It is argued that the regulation adopted by the Director expanding the definition of doing business under the Corporation Business Tax (under which the determination at issue was made) should be applied only prospectively. The regulation, amending N.J.A.C. 18:7-1.9 to include the licensure of trademarks to retailers operating in New Jersey was adopted in 1996. 28 N.J.R. 4795(a). It is unquestionably the Director’s response to the question of the necessity of physical presence for nexus in light of Quill and Geoffrey. This decision concludes that physical presence is a necessary element for Commerce Clause nexus after Quill. Moreover, the tax period that remains in dispute between the parties begins after the effective date of the amendment. The retroactivity question is therefore moot.
Nevertheless, if physical presence were no longer a necessary element for nexus, retroactive application of a rule permitting a finding of nexus without physical presence would appear problematical. Regulations interpreting the terms of a tax statute do not by their own force impose taxes, and by their nature they are ordinarily retroactive to the statute’s effective date. Sharps, *218 Pixley, Inc. v. Director, Div. of Taxation, 16 N.J.Tax 626, 640 (Tax 1997); General Bldg. Prods. Corp. v. Director, Div. of Taxation, 14 N.J.Tax 232, 247 (Tax 1994) aff'd, 15 N.J.Tax 213 (App.Div.1995). Where, however, a tax regulation is premised on a perceived change in federal constitutional law, the same considerations do not necessarily apply. New Jersey has settled precedent, antedating Quill and Geoffrey, that bases nexus on physical presence. Avco Fin. Servs. Consumer Disc. Co. One, Inc. v. Director, Div. of Taxation, 100 N.J. 27, 38, 494 A.2d 788 (1985) (finding “substantial physical presence”); Chemical Realty Corp. v. Director, Div. of Taxation, 5 N.J.Tax 581, 612 (Tax 1983), aff'd 6 N.J.Tax 448 (App.Div.1984). A finding of nexus without physical presence would clearly reflect a change in applicable law. In these circumstances, this court could reasonably conclude that the novelty of the change and the reliance interests of taxpayers under the former interpretation justify confining the new rule to application only after the effective date of the amendment to the regulation. Cf. State Troopers Fraternal Ass’n of N.J., Inc. v. State, 149 N.J. 38, 692 A.2d 519 (1997).
It is appropriate to note, in addition, certain considerations that arise from the particular facts of this case. The plaintiff, while not physically present in the state, does have a direct long-term contractual relationship with a related entity clearly doing business in New Jersey. The case does not therefore concern isolated transactions, indirect connections or distant actors who cannot anticipate where the products of their effort, tangible or intangible, may come to be employed. If physical presence were not a requirement, nexus might be found in the circumstances of this case, but not necessarily in cases where there is no direct contractual relationship between the producer of property and its user in this state. There are other factors besides physical presence that can limit nexus findings and prevent taxation of remote parties. Certainly the due process standards of notice and fair warning will continue to hold. This decision concludes, however, that physical presence continues to be a requirement of the Commerce Clause.
This case and Geoffrey, as well as certain decisions in other states dealing with the necessity of physical presence for nexus, *219 concern corporations organized to hold intangible property used in a retail or other business by an affiliated corporation. They are usually incorporated in jurisdictions that do not tax them on the receipt of license or royalty income from the operating company, which takes a deduction from its own income for the royalty payment as an ordinary business expense. The result is that the single enterprise which includes the two corporations receives income, not taxable under traditional nexus rules in any jurisdiction, which the Geoffrey court characterized as “nowhere income.” Among the reasons, and perhaps the decisive reason, for placing ownership of intangibles in a separate corporation, is the avoidance of taxation. Michael A. Lisi, Practicing Law Institute, Intracorporate Licensing: A Domestic Trademark Holding Company Example, (PLI Order No. G4-4033, Mar. 1998).
Legitimate means to minimize taxation are, of course, the prerogative of any business and perhaps the dictate of marketplace competition. It is a familiar principle that a taxpayer is bound by its choice among different structures or transactions and must pay more tax, if it has chosen one means rather than another that would accomplish the same result with lower tax consequences. General Trading Co. v. Director, Div. of Taxation, 83 N.J. 122, 416 A.2d 37 (1980). The taxing authority is similarly bound where the taxpayer has chosen shrewdly.
This decision determines that the state may not assert nexus, absent physical presence, against a corporation that receives income from the use of trademarks or other intangibles employed in a New Jersey business conducted by an affiliated corporation. The particular technique of tax avoidance can, however, be addressed by other measures. Certain jurisdictions require combined reporting by all corporate components of an enterprise engaged in a unitary business conducted in part within the taxing state. Combined reporting would, as Professor Pomp noted, return to taxable income the royalty payment received by the holding company. Other jurisdictions have elected to disallow the deduction by the operating company. New Jersey is not a combined reporting jurisdiction, but a recent amendment to the *220 CBT disallows deductions for royalty payments made to a related entity for use of intangible property, as those terms are defined in the statute. N.J.S.A. 54:10A-4.4. (enacted as L. 2002, c. 40, § 33, effective July 2, 2002). This opinion, of course, does not address the interpretation of the amendment in any particular factual situation. In circumstances when the amendment does apply, however, jurisdiction to tax the company receiving royalty income from use of its intangibles in New Jersey is not essential to capture that income in this state’s tax base.
In conclusion, since it has been determined that physical presence is a necessary element of Commerce Clause nexus for taxation, judgment shall be entered in favor of plaintiff Lanco invalidating the Director’s determination that it is subject to the New Jersey Corporation Business Tax.

 The original determination required filings beginning in 1983. During the pendency of the action, however, the parties have stipulated that issues concern *204 ing certain reporting periods have been resolved and that the claims in this action are amended to address only the year ending January 31, 1998. The court has allowed the amendment.

 States that impose a sales tax on retail transactions occurring within the state typically also impose a "compensating” use tax on the use of property whose sale in the jurisdiction would be taxable, when a sales tax has not been collected. See N.J.S.A. 54:32B-6. The litigation concerning mail-order vendors deals with the use tax collection obligation, rather than with the liability of the vendors to income taxation by jurisdictions into which they sell, because Congress has immunized mail-order vendors, among others, from income taxation by those jurisdictions. P.L. 86-272 (1959), codified at 15 U.S.C.A. §§ 381 to 384. This statute was enacted in response to the Supreme Court's decision in Northwestern States Portland Cement Co. v. Minnesota, 358 U.S. 450, 79 S.Ct. *205 357, 3 L.Ed.2d 421 (1959), permitting appropriately apportioned state taxation of activities exclusively in furtherance of interstate commerce.

 Combined reporting is distinguished from separate-entity reporting. Under the latter, each corporation or other business entity reports only its own income, while under the former a combined report is submitted for a parent corporation and all its subsidiaries that disregards inter-company transactions. In either system, all income of any unitary business conducted in whole or in part within the State is reported, and the taxable portion is determined by an apportionment *217 formula. See Pomp & Oldman, State & Local Taxation, 10-29 to 10-36 (3d ed.2000). Allied-Signal Inc., v. Director, Div. of Taxation, 504 U.S. 768, 112 S.Ct. 2251, 119 L.Ed.2d 533 (1992) discusses the unitary business concept in its application to New Jersey as a separate-entity jurisdiction.