879 A.2d 1234 (2005)
379 N.J. Super. 562
LANCO, INC., a Delaware corporation, Plaintiff-Respondent,
v.
DIRECTOR, DIVISION OF TAXATION, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued March 3, 2005.
Decided August 24, 2005.
*1235 Patrick DeAlmeida, Deputy Attorney General, argued the cause for appellant (Peter C. Harvey, Attorney General, attorney; Michael J. Haas, Assistant Attorney General, of counsel; Mr. DeAlmeida, on the brief).
Paul H. Frankel, New York City, argued the cause for respondent (McCarter & English and Morrison & Foerster of the New York bar, attorneys; Hollis L. Hyans, Craig B. Fields, Amy F. Nogid, Charles M. Costenbader and Mr. Frankel, on the brief).
Stradley Ronon Stevens & Young, Cherry Hill, attorneys for amicus curiae The Investment Company Institute (Stephen B. Nolan, on the brief).
Rene Y. Blocker, Deputy Director, attorney for amicus curiae Multistate Tax Commission (Mr. Blocker and Sheldon H. Laskin, Director Nexus Program, on the brief).
Before Judges STERN, WECKER and GRAVES.
The opinion of the court was delivered by
STERN, P.J.A.D.
This case presents the important question, as the Tax Court stated it, of "whether New Jersey may constitutionally subject a foreign corporation to the Corporation Business Tax (N.J.S.A. 54:10A-1 et seq., `the CBT'), where the corporation has no physical presence in the state and derives income from a New Jersey source only pursuant to a license agreement with another corporation that conducts a retail business here." Lanco, Inc. v. Director, Div. of Taxation, 21 N.J. Tax 200, 203 (Tax 2003).
Defendant, Director of the Division of Taxation, appeals from an order of January 9, 2004, entering judgment for plaintiff taxpayer "since it does not have a taxable nexus in the State which would subject it to New Jersey's Corporate Business Tax." Plaintiff, which licenses intellectual property (trademarks, trade names and service marks) to Lane Bryant, a clothing retailer, has no real or personal property or personnel in the State, and the Tax Court, in a published opinion, held that because plaintiff was not physically present in New Jersey, subjecting it to the tax would violate the Commerce Clause of the federal constitution. Lanco, supra, 21 N.J.Tax at 214. On this appeal the Director argues that Lanco derived receipts from sources in the State, thereby making it subject to the tax, and that "there are no constitutional impediments to application of the corporation business tax to plaintiff given its substantial nexus to New Jersey" because there was no violation of the due process clause (which is not contested before us)[1] or the Commerce Clause (which is the critical issue contested on the appeal). Thus, the critical issue is whether the taxpayer must have a physical presence in the state in order to constitute the required "substantial nexus" necessary to satisfy the Commerce Clause under Quill Corp. v. North Dakota, 504 U.S. 298, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992), which applied that test and held physical presence was necessary in the context of a sales and use tax.
The Tax Court succinctly stated the relevant facts as follows:

*1236 Plaintiff Lanco, Inc., ("Lanco") is a Delaware corporation that owns certain intangible property (trademarks, trade names and service marks). The parties have stipulated that Lanco has no offices, employees, or real or tangible property in New Jersey. Lanco licenses Lane Bryant, Inc., ("Lane Bryant") to utilize the intangible property in the conduct of Lane Bryant's retail operations, including those in New Jersey, and in return receives royalty payments from Lane Bryant. Lanco and Lane Bryant are affiliated corporations, but the common ownership is not material to the constitutional issue concerning the determination by the defendant, Director of the Division of Taxation ("Director"), that activity under the license agreement makes Lanco subject to taxation in New Jersey. It is the determination that Lanco is obliged to file under the CBT, rather than the calculation of tax claimed to be due, that is contested. [Lanco, supra, 21 N.J. Tax at 203 (footnote omitted).]
In Quill Corp. v. North Dakota, 504 U.S. 298, 301, 112 S.Ct. 1904, 1907, 119 L.Ed.2d 91, 99 (1992), the State of North Dakota sought to impose a duty to collect a use tax on "an out-of-state mail-order house that ha[d] neither outlets nor sales representatives in the State." Quill sold office furniture by mail order catalogue and advertising, and delivered it by mail or common carrier. The Court held that, while the Due Process Clause "minimum contacts" jurisprudence did not bar the state from requiring Quill, as the seller, to collect a use tax, there was an insufficient nexus under the Commerce Clause to permit such a tax. Quill, supra, 504 U.S. at 313, 112 S.Ct. at 1913-14, 119 L.Ed.2d at 101. According to Justice Stevens, "[t]he two standards are animated by different constitutional concerns and policies":
Due process centrally concerns the fundamental fairness of governmental activity. Thus, at the most general level, the due process nexus analysis requires that we ask whether an individual's connections with a State are substantial enough to legitimate the State's exercise of power over him. We have, therefore, often identified "notice" or "fair warning" as the analytic touchstone of due process nexus analysis. In contrast, the Commerce Clause and its nexus requirement are informed not so much by concerns about fairness for the individual defendant as by structural concerns about the effects of state regulation on the national economy.
[Quill, supra, 504 U.S. at 312, 112 S.Ct. at 1913, 119 L.Ed.2d at 106.]
The Court discussed the four factors it first enunciated in Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 279, 97 S.Ct. 1076, 1079, 51 L.Ed.2d 326, 331 (1977), to determine whether a state tax will withstand a commerce clause challenge:
Under Complete Auto's four-part test, we will sustain a tax against a Commerce Clause challenge so long as the "tax [1] is applied to an activity with a substantial nexus with the taxing State, [2] is fairly apportioned, [3] does not discriminate against interstate commerce, and [4] is fairly related to the services provided by the State."
[Quill, supra, 504 U.S. at 311, 112 S.Ct. at 1912, 119 L.Ed.2d at 105.]
In discussing the four factors the Quill Court explained that "[t]he second and third parts of that analysis, which require fair apportionment and non-discrimination, prohibit taxes that pass an unfair share of the tax burden onto interstate commerce." Quill, supra, 504 U.S. at 313, 112 S.Ct. at 1913, 119 L.Ed.2d at 107. "The first and fourth prongs, which require a substantial nexus and a relationship between the tax and state-provided services, limit the reach *1237 of state taxing authority so as to ensure that state taxation does not unduly burden interstate commerce." Ibid. The Court stated:
Thus, the "substantial nexus" requirement is not, like due process' "minimum contacts" requirement, a proxy for notice, but rather a means for limiting state burdens on interstate commerce. Accordingly, ... a corporation may have the "minimum contacts" with a taxing State as required by the Due Process Clause, and yet lack the "substantial nexus" with that State as required by the Commerce Clause.
[Quill, supra, 504 U.S. at 313, 112 S.Ct. at 1913-14, 119 L.Ed.2d at 107 (footnote omitted).]
Accordingly, for purposes of the Commerce Clause, the Quill court maintained the "bright-line, physical-presence requirement [established by National Bellas Hess, Inc. v. Department of Revenue of Ill., 386 U.S. 753, 87 S.Ct. 1389, 18 L.Ed.2d 505 (1967), for imposition] of sales and use taxes." Quill, supra, 504 U.S. at 317, 112 S.Ct. at 1916, 119 L.Ed.2d at 110.[2]
The Director argues that "the rationale for abandoning a physical-presence requirement for Due Process Clause purposes recognizes that businesses engage in significant levels of commercial activity in a state without ever `setting foot' there," and businesses foresee being subject to state tax laws as a result of commercial activity directed at a particular state. The Director further contends that "[t]here is no principled reason why the Commerce Clause should require a corporation's physical presence to justify State taxation... provided the State can establish that the corporation derives significant benefits from continued and deliberate economic activity in the taxing State." The Director also emphasizes that Quill involved vendors whose only connection with customers was by common carrier or the United States mail, but here there is a long-term contractual relationship with a related corporation that operates retail-clothing outlets throughout New Jersey.
Defendant further asserts that the agreement between plaintiff and Lane Bryant "promotes increased retail purchases of merchandise" at stores in New Jersey, and that "growth in retail sales burdens [New Jersey] by increasing traffic, requiring police and fire protection, and imposing demands on the labor pool."[3] Defendant therefore argues that this case is distinguishable from Quill and Bellas Hess, on which Quill relied, where they merely sent mail order catalogs into a state without obtaining the benefits and protection of state services and labor which derive from its physical presence. In this case, the Director maintains that plaintiff and its related entity, Lane Bryant, enjoy numerous benefits provided by New Jersey including: (1) "protection afforded by the New Jersey judiciary to [plaintiff's] rights under the licensing agreement and its right to protect its trademarks and service marks"; (2) maintenance of New Jersey's highway system and production of an "educated workforce"; *1238 and (3) "police, fire and judicial protection" of the physical property upon which Lanco's trademarks are used, even if owned by Lane Bryant.
We agree with the Director that Quill does not apply to taxes other than sales and use taxes, Quill, supra, 504 U.S. at 314, 112 S.Ct. at 1914, 119 L.Ed.2d at 108 (stating "[w]e have not, in our review of other types of taxes, articulated the same physical-presence requirement that Bellas Hess established for sales and use taxes...."), and that the Corporation Business Tax may be constitutionally applied to impose a tax on plaintiff's income from licensing fees attributable to New Jersey.
In Geoffrey Inc. v. South Carolina Tax Comm'n, 313 S.C. 15, 437 S.E.2d 13, 18, cert. denied, 510 U.S. 992, 114 S.Ct. 550, 126 L.Ed.2d 451 (1993), the Supreme Court of South Carolina noted the distinction between the taxes involved in Quill and income taxes:
It is well settled that the taxpayer need not have a tangible, physical presence in a state for income to be taxable there. The presence of intangible property alone is sufficient to establish nexus. American Dairy Queen[ v. Tax. & Rev. Dept.], 93 N.M. [743] at 747, 605 P.2d [251] at 255 [1979]. See also Int'l Harvester Co. v. Wisconsin Dep't of Taxation, 322 U.S. 435, 441-442, 64 S.Ct. 1060, 1063-64, 88 L.Ed. 1373, 1379 (1944) (a state may tax such part of the income of a non-resident as is fairly attributable either to property located in the state or to events or transactions which, occurring there, are within the protection of the state and entitled to the numerous other benefits which it[] confers); J. Hellerstein & W. Hellerstein, supra, at 6.08 (any corporation that regularly exploits the markets of a state should be subject to its jurisdiction to impose an income tax even though not physically present). A taxpayer who is domiciled in one state but carries on business in another is subject to taxation measured by the value of the intangibles used in his business. Curry[ v. McCanless], 307 U.S. [357] at 368, 59 S.Ct. [900] at 906, 83 L.Ed. [1339] at 1348 [1939]. We hold that by licensing intangibles for use in this State and deriving income from their use here, Geoffrey has a "substantial nexus" with South Carolina.
[Geoffrey, Inc., supra, 437 S.E.2d at 18.][4]
Accordingly, the South Carolina Supreme Court upheld the income tax imposed against the owner of trade names and trademarks for which Toys `R Us paid a license fee for use in South Carolina. Id. at 17.
The recent and, in our view, the more persuasive authority leads us to join the jurisdictions which have followed Geoffrey and to uphold the tax. This is particularly true because, as the Tax Court stated, "the CBT statute is clearly intended to reach foreign corporations engaged in business activities within the state to the full extent that is constitutionally permissible." Lanco, supra, 21 N.J. Tax at 214, citing Roadway Express, Inc. v. Director, Div. of Taxation, 50 N.J. 471, 483, 236 A.2d 577 (1967), appeal dismissed, 390 U.S. 745, 88 S.Ct. 1443, 20 L.Ed.2d 276 (1968). See also Bendix Corp. v. Director, Div. of Taxation, 125 N.J. 20, 592 A.2d 536 (1991) (assessment of capital gains tax on sales by corporation doing business in multiple states), rev'd, sub nom. Allied-Signal, *1239 Inc. v. Director, Div. of Taxation, 504 U.S. 768, 112 S.Ct. 2251, 119 L.Ed.2d 533 (1992).
In A & F Trademark, Inc. v. Tolson, 167 N.C.App. 150, 605 S.E.2d 187 (2004), petition for cert. filed, ___ U.S. ___, ___ S.Ct. ___, ___ L.Ed.2d ___, 73 U.S.L.W. 3719 (U.S. Jun. 06, 2005) (No. 04-1625), decided since the Tax Court's opinion in this case, the North Carolina Court of Appeals upheld the assessment of corporate franchise and income taxes against wholly-owned, non-domiciliary subsidiary corporations of Limited, Inc. Id. at 192-93. Like the plaintiffs in the case before us, the North Carolina taxpayers were related to a clothing retailer with stores in North Carolina and contended "that the presence of their intangible property in North Carolina [as a result of license fees paid for use of trademarks] is irrelevant in light of the lack of physical presence of offices, facilities, employees and real or tangible property," and that the United States Supreme Court's opinion in Bellas Hess required a finding that the tax sought to be imposed by North Carolina violated the Commerce Clause. Id. at 193. Specifically, the taxpayers asserted that "they did not have a substantial nexus with North Carolina because they have no physical presence in [the] State." Ibid.
The North Carolina Court of Appeals rejected the argument because "[b]oth Bellas Hess and Quill involved attempts by a state to require out-of-state mail-order vendors to collect and pay use taxes on goods purchased within the state despite the fact that the vendors had no outlets or sales representatives in the state." Ibid. According to the North Carolina Court of Appeals, the Supreme Court's decision in Bellas Hess, "`stands for the proposition that a vendor whose only contacts with the taxing State are by mail or common carrier lacks the `substantial nexus' required by the Commerce Clause'" to support the tax, ibid. (quoting Quill, supra, 504 U.S. at 311, 112 S.Ct. at 1912, 119 L.Ed.2d at 106), and Quill ultimately concluded that, "for purposes of sales and use taxes assessed against vendors whose only contact with a state is by mail or common carrier, the substantial nexus prong of Complete Auto could appropriately be determined by a `bright-line, physical presence requirement.'" Id. at 194, quoting Quill, 504 U.S. at 317, 112 S.Ct. at 1916, 119 L.Ed.2d at 110.
The North Carolina Court of Appeals stated three reasons for declining to adopt the broader reading of Quill as requiring a physical presence for income tax purposes. Id. at 194-95. "First, the tone in the Quill opinion hardly indicates a sweeping endorsement of the bright-line test it preserved, and the Supreme Court's hesitancy to embrace the test certainly counsels against expansion of it." Id. at 194. This was because in its discussion of the Commerce Clause, the Supreme Court noted that "while Bellas Hess did not conflict with recent Commerce Clause cases, `contemporary Commerce Clause jurisprudence might not dictate the same result were the issue to arise for the first time today.'" Ibid. (quoting Quill, supra, 504 U.S. at 311, 112 S.Ct. at 1912, 119 L.Ed.2d at 105). Stated differently, "recent Commerce Clause decisions ... signaled a `retreat from the formalistic constrictions of a stringent physical presence test in favor of a more flexible substantive approach.'" Ibid. (quoting Quill, 504 U.S. at 314, 317, 112 S.Ct. at 1914, 1915, 119 L.Ed.2d at 107, 110). According to the North Carolina Court of Appeals:
The [United States Supreme] Court further observed the physical-presence test, though offset by the clarity of the rule, was "artificial at its edges." Quill, 504 U.S. at 315, 112 S.Ct. at 1914, 119 L.Ed.2d at 108. In addition, the Court twice noted that in other types of taxes, it had never articulated the same physical-presence *1240 requirement adopted in Bellas Hess, see Quill, 504 U.S. at 314 and 317, 112 S.Ct. at 1914 and 1915, 119 L.Ed.2d at 108 and 110, but cautioned that the failure to expand the Bellas Hess rule established for sales and use taxes to other types of taxes did not imply that the Bellas Hess rule as applied to sales and use taxes was vestigial or disapproved. Id. Nonetheless, the Court's choice to abstain from rejecting the Bellas Hess rule for sales and use taxes fails to argue persuasively that the rule should, for lack of rejection, be augmented to cover other types of tax. While the Supreme Court may ultimately choose to expand the scope of the physical-presence test reaffirmed in Quill beyond sales and use taxes, its equivocal reaffirmation of that test does not readily make that choice self-evident.
[A & F Trademark, supra, 605 S.E.2d at 194.]
The North Carolina court in A & F Trademark further stated that the retention of the Bellas Hess test in Quill was based on the principle of stare decisis and the "substantial reliance" on the physical-presence test, which had "become part of the basic framework of a sizable industry." Ibid. (quoting Quill, supra, 504 U.S. at 317, 112 S.Ct. at 1916, 119 L.Ed.2d at 110). The North Carolina court concluded that it "need look no further than the language in Quill to summarily dispense with the possibility that stare decisis plays an analogous role" in a case involving neither the use or sales tax because the Supreme Court had twice expressed that the bright-line, physical-presence requirement of Bellas Hess "had not been adopted in other forms of taxation." Ibid. Furthermore, the court dismissed the possibility that analogous substantial reliance  as discussed in Quill  existed in the present case "since the physical-presence requirement has never been established by judicial precedent for other forms of taxation," and the North Carolina form of taxation was relatively new. Ibid.
Finally, A & F Trademark relied on Jerome R. Hellerstein, Geoffrey and the Physical Presence Nexus Requirement of Quill, 8 State Tax Notes 671, 676 (1995), and found "important distinctions between sales and use taxes [as compared to] income and franchise taxes `that makes the physical presence test of the vendor use tax collection cases inappropriate as a nexus test'" for taxation beyond the use and sales taxes. A & F Trademark, supra, 605 S.E.2d at 194-95. The court quoted the Hellerstein article to the effect that the "`[United States]' Supreme Court has made it clear that the presence of the recipient of income from intangible property in a state is not essential to the state's income tax on income of a nonresident.'" Id. at 194-95 (quoting Hellerstein, supra, at 676).
Thus, the North Carolina court in A & F Trademark followed the determination in Geoffrey, which our Tax Court rejected, and concluded:
[W]e reject the contention that physical presence is the sine qua non of a state's jurisdiction to tax under the Commerce Clause for purposes of income and franchise taxes. Rather, we hold that under facts such as these where a wholly-owned subsidiary licenses trademarks to a related retail company operating stores located within North Carolina, there exists a substantial nexus with the State sufficient to satisfy the Commerce Clause. Accord Geoffrey, 437 S.E.2d at 18 (holding that "by licensing intangibles [to Toys `R Us, an affiliated operating store,] for use in [South Carolina] and deriving income from their use [t]here, Geoffrey ha[d] a `substantial nexus' with South Carolina"); Kmart [Properties, Inc. v. Taxation and Revenue Dep't of *1241 New Mexico, No. 21, 140 at 13 (N.M.Ct. App. Nov. 27, 2001)] at 15 (holding that "the use of KPI's [the wholly-owned trademark holding company licensor] marks within New Mexico's economic market, for the purpose of generating substantial income for KPI, establishe[d] a sufficient nexus between that income and the legitimate interests of the state and justifie[d] the imposition of a state income tax").
[A & F Trademark, supra, 605 S.E.2d at 195.]
Of particular interest, the court addressed this very case and stated:
We are also cognizant of the holding of the New Jersey Tax Court in a case involving one of the taxpayers before this Court on the same issue. Lanco, Inc. v. Dir., Div. of Tax'n., 21 N.J. Tax 200 (2003). In that case, the New Jersey Tax Court concluded "that the physical presence of the taxpayer or its employee(s), agent(s), or tangible property in a jurisdiction has been and remains a necessary element for a finding of substantial nexus under the Commerce Clause of the United States Constitution." Id., 21 N.J. Tax at 214. We respectfully disagree. Summarizing the salient portions of that opinion, the New Jersey Tax Court (1) found it "illogical" to have a physical presence as a constitutional necessity for sales and use taxes but not for income tax, (2) opined physical presence, as a prerequisite to state taxation of income, was "fully consistent with and strongly suggested by the Commerce Clause cases decided before Quill" because the circumstances of those cases involved taxpayers who were physically present in the state attempting to impose the tax, and (3) stated "other state court cases decided since Quill do not follow the Geoffrey rule." Id., 21 N.J. Tax at 208-09.
Regarding the first reason given by the New Jersey Tax Court, the Quill opinion itself twice notes the singularity of its adoption and reaffirmation of the physical-presence test for Commerce Clause nexus in the arena of sales and use taxes. Moreover, as illustrated by our analysis herein, we disagree with the New Jersey Tax Court that there do not exist certain distinctions between the tax at issue in Quill and those considered in the instant case that justify divergent treatment. Regarding the second reason, we do not accord the same import to pre-Quill cases in which it was far more likely that a taxpayer would be required to be physically present (in the traditional commercial sense) in a state in order to earn income there. Lastly, the third reason espoused by the New Jersey Tax Court rings hollow. For example, in discussing General Motors Corp. v. City of Seattle, 107 Wash.App. 42, 25 P.3d 1022 (2001), cert. den., 535 U.S. 1056, 122 S.Ct. 1915, 152 L.Ed.2d 825 (2002), the New Jersey Tax Court dismisses the Washington appellate court's express declaration that it "decline[d] to extend Quill's physical presence requirement" to a business and occupation tax on the basis that the taxpayers in that case had a physical presence in that jurisdiction. The corporation's physical presence can hardly serve to obscure the Washington Court's unequivocal choice to stand with Geoffrey's containment of the Quill physical-presence test. More importantly, any assertion that Geoffrey has not been, by and large, approved of in subsequent cases cannot be sustained. See J. Hellerstein & W. Hellerstein, State Taxation, Para. 6.11[3] at 6-16 (Warren, Gorham & Lamont, 3d ed. Cum.Supp.2004) (comprehensively analyzing judicial and administrative post-Geoffrey developments and summarizing that, although mixed, "judicial and administrative reaction to the opinion across the country *1242 has generally supported [Geoffrey's] position that Quill's physical-presence test of Commerce Clause nexus does not extend to income taxes").
[Id. at 195-96 (footnote omitted).]
Similarly, in Secy, Dep't of Revenue v. Gap (Apparel), Inc., 886 So.2d 459, 461-62 (La.Ct.App.2004) (per curiam) (hereinafter "Gap"), the Louisiana Court of Appeals held that the state could impose a corporate income tax on Gap Apparel, a Delaware corporation, in circumstances involving intangible property almost identical to the facts before us. Apparel authorized the Gap and its affiliates to use registered trademarks, trade names and service marks for which it received "a royalty based on the net sales of the licensed products." Id. at 461. The court upheld the tax despite the absence of real or personal property, employees or other presence in Louisiana and the absence of the entry of any licensing agreement there, id. at 462, stating:
[I]t is clear that the marks licensed by Apparel have been used in Louisiana in such a way as to become an integral part of the licensees' businesses in this state. Numerous marks (i.e. Gap, Baby Gap, Gap Kids, Pro Fleece) have been licensed by Apparel and used by the licensees to conduct and promote their businesses in this state. Clearly, the intangibles have acquired a business situs in Louisiana and are subject to taxation in this state.
[Gap, supra, 886 So.2d at 462.]
We are satisfied that the physical presence requirement applicable to use and sales taxes is not applicable to income tax and that the New Jersey Business Corporation Tax may be constitutionally applied to income derived by plaintiff from licensing fees attributable to New Jersey.
Accordingly, we reverse the judgment of the Tax Court and remand for further proceedings relating to the tax imposed consistent with this opinion.[5]
NOTES
[1] We need not comment on the Tax Court's thorough and well-reasoned analysis of the Due Process issue, see Lanco, supra, 21 N.J. Tax at 214-17, as plaintiff does not endeavor to defend the judgment on due process grounds.
[2] As will be further developed hereinafter, a careful reading of Quill reflects the express limitation for sales and use taxes as a matter of stare decisis in light of Bellas Hess, even though "the Bellas Hess rule appears artificial at its edges." Quill, supra, 504 U.S. at 315, 112 S.Ct. at 1914, 119 L.Ed.2d at 108.
[3] Many facts were stipulated, and we rely on the Tax Court's recitation of facts. Because we reverse the Tax Court on the Commerce Clause holding (and merely address the fundamental issue presented), we will allow further development before that court of any remaining relevant or material factual contest which may affect the taxability, determination of apportionment of income attributable to New Jersey, or tax for any particular tax year in question.
[4] In Geoffrey there was no commerce clause challenge based on the discrimination or unfair apportionment prongs. Geoffrey also rejected a due process challenge and found Geoffrey purposefully directed its activities to South Carolina by allowing the use of trademarks and intangible assets in the state. Id. at 17.
[5] It is unclear from the argument before us as to whether the unresolved dispute involves more than one year, see Lanco, supra, 21 N.J. Tax at 203-04 n. 1, and other issues not disposed of by stipulation. As noted, supra, at 566, 879 A.2d at 1237, footnote 2 of this opinion, we have resolved the critical issue under review, and we remand to the Tax Court for resolution of all open issues or questions which arise in light of our judgment. However, because of the constitutional issue involved, we stay the remand if plaintiff files a timely direct appeal or, to be safe in case the Supreme Court does not consider the issue "substantial," see R. 2:2-1(a)(1), pending decision on a petition for certification.