GEOFFREY, INC. vs. COMMISSIONER OF REVENUE.

Suffolk. October 7, 2008. - January 8, 2009.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, & BOTSFORD, JJ.

*Administrative Law,* Substantial evidence. *Taxation,* Corporate excise, Appel-
late Tax Board: appeal to Supreme Judicial Court, Interest and penalties,
Abatement, Commissioner of revenue. *Constitutional Law,* Taxation, Com-
merce clause. *Words,* "Substantial nexus."

The Appellate Tax Board (board) correctly affirmed the denial by the Com-
missioner of Revenue of an application by an out-of-State corporation
(taxpayer) for abatement of corporate excise taxes imposed pursuant to
G. L. c. 63, § 39, where the imposition of such taxes was consistent with
the commerce clause of the United States Constitution, despite the taxpayer's
lack of physical presence in the Commonwealth, as the taxpayer's business
activities (in particular, the taxpayer's purposeful efforts to reap substantial
royalty income by licensing trademarks for exclusive use in retail stores in
the Commonwealth) established a substantial nexus with the Commonwealth
justifying the imposition of such a tax for the years at issue [21-25];
further, the board did not err in concluding that the taxpayer was not
entitled to abatement of the penalties assessed pursuant to G. L. c. 62C,
§ 33, where the taxpayer did not demonstrate that it had acted with reason-
able cause in failing to file returns or pay corporate excise taxes for the
years at issue [25-27].

APPEAL from a decision of the Appellate Tax Board.

The Supreme Judicial Court granted an application for direct
appellate review.

*Paul H. Frankel,* of New York (*Maxwell D. Solet* with him)
for the taxpayer.

*Thomas A. Barnico,* Assistant Attorney General, for Commis-
sioner of Revenue.

SPINA, J. The present appeal is from a decision of the Appel-
late Tax Board (board) affirming the denial by the Commis-
sioner of Revenue (commissioner) of an application by the tax-
payer, Geoffrey, Inc. (Geoffrey), for the abatement of corporate
excises assessed for the tax years ending January 31, 1997,

through January 31, 2001. We granted Geoffrey's application for direct appellate review. At issue is whether, consistent with the commerce clause, art 1, § 8, of the United States Constitution,[1] the Commonwealth can impose a corporate excise tax, pursuant to G. L. c. 63, § 39, on a foreign corporation[2] that does not have a physical presence in Massachusetts. In our decision in *Capital One Bank* v. *Commissioner of Revenue, ante* 1, 15 (2008) (*Capital One*), released today, we concluded that the constitutionality, under the commerce clause, of the Commonwealth's imposition of an income-based excise on an out-of-State entity is not determined by the "physical presence" test articulated in *Quill Corp.* v. *North Dakota,* 504 U.S. 298, 317-318 (1992) (*Quill*), but by the "substantial nexus" test articulated in *Complete Auto Transit, Inc.* v. *Brady,* 430 U.S. 274, 279 (1977) (*Complete Auto*). Our holding in *Capital One* is controlling with respect to Geoffrey's constitutional claim. For the reasons that follow, we now affirm the decision of the board.

The board found the following facts, based on the parties' stipulations of facts and the testimony and exhibits introduced at the hearing. See G. L. c. 58A, § 13 ("The decision of the board shall be final as to findings of fact"); *United Church of Religious Science* v. *Assessors of Attleboro,* 372 Mass. 280, 281 (1977).

On January 24, 1984, Geoffrey was incorporated in Delaware as a wholly owned subsidiary of Toys "R" Us, Inc. (Toys Inc.), a Delaware corporation.[3] Effective August 1, 1984, Toys Inc. transferred trademarks, trade names, and service marks (collectively, trademarks) to Geoffrey in exchange for stock. Included in this transfer were the "Toys 'R' Us" and "Kids 'R' Us" trademarks and the "Geoffrey" giraffe character logo. A 1991 appraisal by Arthur Andersen & Co. determined that the fair market value of the intellectual property owned by Geoffrey was $1.5

---

[1] The commerce clause authorizes Congress to "regulate Commerce . . . among the several States." Art. 1, § 8, of the United States Constitution.

[2] A "[f]oreign corporation" is defined as a "corporation, association, or organization established, organized or chartered under laws other than those of the commonwealth." G. L. c. 63, § 30 (2).

[3] For the first four tax years at issue, Geoffrey's principal place of business was in Wilmington, Delaware. On January 1, 2000, Geoffrey moved its principal place of business to Paramus, New Jersey.

billion. Geoffrey's business activities consisted of licensing the trademarks to various Toys Inc. subsidiaries and affiliates for use in their retail operations throughout the United States. Geoffrey had no employees or offices in Massachusetts, and it owned no tangible property, real or personal, in this Commonwealth. The trademarks were registered with the United States Patent and Trademark Office.

Toys "R" Us-Mass, Inc. (TRUMI), was another subsidiary of Toys Inc. During the tax years at issue, TRUMI operated twenty-six Toys "R" Us and Kids "R" Us retail stores in the Commonwealth. Pursuant to a licensing agreement dated May 3, 1992, Geoffrey permitted TRUMI to use the "Toys 'R' Us" and "Kids 'R' Us" trademarks solely in Massachusetts in exchange for royalty payments to Geoffrey at a rate of three per cent of TRUMI's net sales at Toys "R" Us stores, and two per cent of its net sales at Kids "R" Us stores. This agreement was made subject to the laws of Delaware. TRUMI filed Massachusetts corporate excise tax returns on a separate company basis, and it claimed a deduction for a portion of the royalties paid to Geoffrey.

In February, 1997, Geoffrey entered into a similar licensing agreement with Babies "R" Us, a division of Baby Superstore, Inc. (Baby Superstore), which was an affiliate of TRUMI, for the use of Geoffrey's "Babies 'R' Us" trademark. During the tax years at issue, Babies "R" Us operated three retail stores in the Commonwealth. Pursuant to this licensing agreement, Babies "R" Us paid Geoffrey royalties at a rate of one per cent of its net sales for the 1996 fiscal year, one and one-half per cent of its net sales for the 1997 fiscal year, and two per cent of its net sales for the remaining years of the agreement.

Geoffrey's trademarks appeared on signage, store displays, and product packaging at Massachusetts stores operated by TRUMI and Baby Superstore. The trademarks were intended to demonstrate to consumers that goods and services sold by licensees were of high quality and good value. Pursuant to the licensing agreements, Geoffrey had the right to review product samples and specifications, signs, labels, tags, packaging materials, advertising and sales promotion materials, catalogues, and pamphlets that displayed the trademarks. TRUMI and Baby Superstore agreed to comply with Geoffrey's instructions to ensure that the

trademarks did not become generic, which could adversely affect Geoffrey's interests in them. Geoffrey received over $33 million in royalty income from retail stores located in Massachusetts during the tax years at issue.[4]

Under a quality control, legal and treasury service agreement dated February 3, 1996, Toys Inc. provided advice and assistance to Geoffrey with respect to investment opportunities, accounting matters, and licensing issues. In particular, Toys Inc. dedicated the services of an intellectual property specialist to the task of protecting Geoffrey's assets. Toys Inc. also employed regional and district managers with responsibilities for Massachusetts stores who could monitor the use of the trademarks in the Commonwealth and would bring store problems to the attention of appropriate officials. Reports from Toys Inc. explaining the results of its quality control activities were provided to Geoffrey. For its services, Toys Inc. was paid $300,000 annually. In addition, Geoffrey had access to State and Federal courts in Massachusetts to protect its interests in its trademarks and its entitlement to royalty payments under the licensing agreements.

During an audit of TRUMI in 2002, the Department of Revenue (department) discovered that Geoffrey had been receiving royalty income under the licensing agreement with TRUMI, but had not been filing corporate excise returns in Massachusetts.[5] On October 2, 2002, the department issued to Geoffrey a notice of failure to file corporate excise returns for the tax years at issue. In response, Geoffrey provided the department with unsigned, pro forma returns for the relevant years. On December 14, 2002, the department issued to Geoffrey a notice of intent to assess, which was subsequently revised on December 23, 2002. Approximately one month later, the department sent Geoffrey a notice of assessment for the tax years at issue in the amount of $3,143,445, consisting of $1,692,568 in corporate excise taxes,

---

[4]Geoffrey's annual royalty income from retail stores in the Commonwealth was as follows: $5,928,567, for the tax year ending February 1, 1997; $6,554,265 for the tax year ending January 31, 1998; $6,628,656 for the tax year ending January 30, 1999; $7,117,981 for the tax year ending January 29, 2000; and $7,423,420 for the tax year ending February 3, 2001.

[5]Similarly, separate royalty income paid to Geoffrey by Baby Superstore pursuant to its licensing agreement had not been reported to the department and would become part of the tax assessment.

$645,008 in accrued interest, and $805,865 in penalties.[6] Geoffrey filed a timely application for abatement, claiming that it was not obligated to pay such taxes because it had no nexus with the Commonwealth. See G. L. c. 62C, § 37. On September 19, 2003, the commissioner denied the application, and Geoffrey appealed to the board pursuant to G. L. c. 62C, § 39.

In affirming the commissioner's denial of the abatement, the board stated that Geoffrey's business activities in Massachusetts constituted a "substantial nexus" with the Commonwealth that justified imposition of the corporate excises for the tax years at issue. In particular, the board based its determination on Geoffrey's purposeful efforts to reap economic benefits from the Commonwealth's retail marketplace by licensing the trademarks for use by TRUMI and Baby Superstore. The trademarks, the board pointed out, were used extensively by Toys "R" Us, Kids "R" Us, and Babies "R" Us stores in Massachusetts, and such use resulted in Geoffrey's receipt of substantial royalty income. The board also noted that Geoffrey retained the right to regulate use of the trademarks, and was afforded access to State and Federal courts in Massachusetts to protect its interests.[7] Consequently, the board concluded that the Commonwealth's assessment of corporate excise taxes on Geoffrey was constitutional under the Federal commerce clause. The board further stated that Geoffrey did not demonstrate that it had acted with reasonable cause in failing to file returns or pay corporate excises for the tax years at issue, and therefore, Geoffrey was not entitled to abatement of the penalties assessed pursuant to G. L. c. 62C, § 33.[8]

A decision by the board will not be modified or reversed if

---

[6]The parties' second supplemental stipulation of facts corrected the amount of the assessment to $2,456,435, consisting of $1,257,793 in corporate excise taxes, $567,101 in accrued interest, and $631,541 in penalties.

[7]Geoffrey points out that it did not use State or Federal courts in Massachusetts during the tax years at issue to protect its intellectual property rights.

[8]In its appeal to the Appellate Tax Board (board), Geoffrey also took issue with the apportionment of its income on the ground that it resulted in the taxation of extraterritorial values. General Laws c. 63, § 38, provides that the net income of a foreign corporation derived from business activity that is taxable both within and without the Commonwealth shall be apportioned in accordance with a specified statutory formula. The board concluded that the apportionment formula was calculated correctly with respect to Geoffrey's

the decision "is based on both substantial evidence and a correct application of the law." *Boston Professional Hockey Ass'n* v. *Commissioner of Revenue*, 443 Mass. 276, 285 (2005). We presume that a tax is constitutionally valid unless the party challenging it establishes its invalidity "beyond a rational doubt." *Andover Sav. Bank* v. *Commissioner of Revenue*, 387 Mass. 229, 235 (1982). While we give deference to the board's expertise in interpreting the tax laws of the Commonwealth, see *French* v. *Assessors of Boston*, 383 Mass. 481, 482 (1981), we apply our independent judgment as to both the law and the facts on constitutional issues. See *Opinion of the Justices*, 328 Mass. 679, 687 (1952).

Pursuant to G. L. c. 63, § 39, "every foreign corporation, exercising its charter, or qualified to do business or actually doing business in the commonwealth, or owning or using any part or all of its capital, plant or any other property in the commonwealth, shall pay, on account of each taxable year, the [specified] excise." The Legislature has stated that the purpose of § 39 is to require foreign corporations to pay "for the enjoyment under the protection of the laws of the commonwealth, of the powers, rights, privileges and immunities derived by reason of the corporate form of existence and operation." *Id.* In accordance with G. L. c. 62C, § 3, "[t]he commissioner may prescribe regulations and rulings, not inconsistent with law, to carry into effect the provisions of [G. L. c. 63, § 39], which regulations and rulings, when reasonably designed to carry out the intent and purposes of said provisions, shall be prima facie evidence of their proper interpretation." Pursuant to this authority, the commissioner promulgated 830 Code Mass. Regs. § 63.39.1 (1993), which "describes the circumstances under which a foreign corporation is subject to the tax jurisdiction of Massachusetts under . . . G. L. c. 63, § 39." 830 Code Mass. Regs. § 63.39.1(1)(a). As is pertinent here, "a foreign corporation must file a return in Massachusetts and pay the associated excise if . . . the corporation owns property that is held by another in Massachusetts under a lease, consignment, *or other arrangement*" (emphasis added). 830 Code Mass. Regs. § 63.39.1(4)(d)(1). The licensing of the trademarks by

income. Geoffrey has not challenged this determination in the present appeal, so we need not consider it further.

Geoffrey to TRUMI and Baby Superstore would be one type of "other arrangement" that would subject Geoffrey to the corporate excise tax under G. L. c. 63, § 39.

That said, the thrust of Geoffrey's appeal is that, because Geoffrey had no physical presence in Massachusetts, the imposition of the corporate excise under § 39 violated the Federal commerce clause.[9] We disagree.

As we stated at the outset of this opinion, resolution of the physical presence issue under commerce clause analysis is governed by our decision in *Capital One, supra.* We now conclude that substantial nexus can be established where a taxpayer domiciled in one State carries on business in another State through the licensing of its intangible property that generates income for the taxpayer. In reaching this conclusion, we join other jurisdictions that have considered the physical presence issue in the context of intangible property and have upheld the imposition of income-based tax assessments. See *Geoffrey, Inc.* v. *South Carolina Tax Comm'n*, 313 S.C. 15, 23-24, cert. denied, 510 U.S. 992 (1993) (licensing intangible property for use in taxing State and deriving income from such use established substantial nexus for imposition of income-based tax in conformity with commerce clause); *Bridges* v. *Geoffrey, Inc.*, 984 So. 2d 115, 128 (La. Ct. App. 2008) (same); *Geoffrey, Inc.* v. *Oklahoma Tax Comm'n*, 132 P.3d 632, 638-639 (Okla. Ct. App. 2005) (same). See also *Lanco, Inc.* v. *Director, Div. of Taxation*, 379 N.J. Super. 562, 573 (App. Div. 2005), aff'd, 188 N.J. 380, 383 (2006) (per curiam), cert. denied, 127 S. Ct. 2974 (2007) (concluding that State may constitutionally subject foreign corporation to business tax where corporation lacks physical presence in State but derives income from licensing agreement with company conducting retail operations in State); *Kmart Props., Inc.* v. *Taxation & Revenue Dep't of N.M.*, 139 N.M. 177, 186 (Ct. App. 2001) (stating that "the use of KPI's marks within New Mexico's economic market, for

---

[9]A State's ability to tax businesses operating in interstate commerce also is constrained by the due process clause of the Fourteenth Amendment to the United States Constitution. See *Capital One Bank* v. *Commissioner of Revenue, ante* 1, 9 n.14 (2008). Geoffrey does not challenge the imposition of the corporate excise tax on the ground that Geoffrey's purported "economic presence" in Massachusetts was insufficient to satisfy the "minimum contacts" standard of the due process clause.

the purpose of generating substantial income for KPI, establishes a sufficient nexus between that income and the legitimate interests of the state and justifies the imposition of a state income tax"), rev'd on other grounds, 139 N.M. 172 (2005); *A & F Trademark, Inc.* v. *Tolson,* 167 N.C. App. 150, 162 (2004), cert. denied, 546 U.S. 821 (2005) (concluding that where out-of-State company licenses trademarks to related in-State retail company, there exists substantial nexus with taxing State to satisfy commerce clause). See generally 1 J.R. Hellerstein & W. Hellerstein, State Taxation § 6.11 (3d ed. 2007) (exploitation of intangible property rights in State as basis for jurisdiction to tax out-of-State persons deriving income from such property). Contrast *Rylander* v. *Bandag Licensing Corp.,* 18 S.W.3d 296, 299, 301 (Tex. Ct. App. 2000) (concluding that franchise tax based solely on taxpayer's mere possession of license to do business in Texas was invalid, but not addressing whether royalty payments from licensing of intangibles were sufficient to satisfy substantial nexus test).

Here, Geoffrey engaged in business activities with a substantial nexus to Massachusetts during the tax years at issue. Geoffrey entered into contractual relationships, in the form of licensing agreements, with TRUMI and Baby Superstore and permitted those entities to use the trademarks exclusively in Massachusetts; Geoffrey encouraged Massachusetts consumers to shop at Toys "R" Us, Kids "R" Us, and Babies "R" Us through an implicit promise, manifested by the trademarks, that the products at those stores would be of good quality and value; Geoffrey relied on employees at TRUMI to maintain a positive retail environment, including store cleanliness and proper merchandise display; and Geoffrey reviewed licensed products and materials that would be sold in the Commonwealth to ensure high standards and to maintain its positive reputation with Massachusetts consumers, thereby generating continued business and substantial profits. Geoffrey's annual royalty income from retail stores in the Commonwealth for the tax year ending February 1, 1997, was $5,928,567, and it increased to $7,423,420, by the tax year ending February 3, 2001. Based on the findings of the board, we conclude that Geoffrey's activities established a substantial nexus with Massachusetts, and, therefore, the assessment of the corporate excises, pursuant to

G. L. c. 63, § 39, for the tax years at issue comported with the commerce clause.[10]

Geoffrey also contends that the board erred in failing to abate the assessed penalties where the United States Supreme Court's decisions in *National Bellas Hess, Inc.* v. *Department of Revenue of Ill.*, 386 U.S. 753, 758-760 (1967), and *Quill, supra,* gave Geoffrey reasonable cause to believe that, in the absence of a physical presence in the Commonwealth, it was not subject to Massachusetts corporate excise taxes. At the very least, Geoffrey continues, it should not be penalized for its plausible interpretation of *Quill*, even if such interpretation ultimately proved to be incorrect. In Geoffrey's view, it exercised ordinary business care and prudence. Further, Geoffrey argues that it should not be penalized for what it characterizes as the commissioner's lack of a clear policy in this area of taxation. See, e.g., *Sherwin-Williams Co.* v. *Commissioner of Revenue*, 438 Mass. 71, 72-73 (2002) (commissioner challenged intercompany royalty payments for lacking economic substance, but did not attempt to tax out-of-State affiliated licensor).

Pursuant to G. L. c. 62C, § 33, the commissioner shall assess penalties on a taxpayer for failure to file timely returns and failure to pay taxes. General Laws c. 62C, § 33 (*f*), provides for an abatement of penalties "[i]f it is shown that any failure to file a return or to pay a tax in a timely manner is due to reasonable cause and not due to willful neglect." Reasonable cause will be established where, at a minimum, a taxpayer has demonstrated

---

[10]Closely related to the requirement of "substantial nexus" for imposition of an income-based excise on an out-of-State corporation is the requirement that the tax be "fairly related to the services provided by the State." *Complete Auto Transit, Inc.* v. *Brady*, 430 U.S. 274, 279 (1977). In its brief, Geoffrey suggests that, without physical presence, it would be difficult to conclude that the corporate excise taxes assessed here were "fairly related to" actual benefits provided by the Commonwealth. Geoffrey's appeal to the board focused on the substantial nexus prong of the *Complete Auto* test. Consequently, the board did not address whether the corporate excise tax was fairly related to services provided by the Commonwealth. Generally speaking, a corporation engaged in business activities in Massachusetts could be the beneficiary of services provided by the State, even in the absence of physical presence. For example, growth in the retail marketplace may necessitate governmental action to address increased traffic on Massachusetts roads, potentially greater demands on the Commonwealth's labor force, and the necessity for adequate police and fire protection.

that "he exercised the degree of care that an ordinary taxpayer in his position would have exercised." *Commissioner of Revenue* v. *Wells Yachts S., Inc.*, 406 Mass. 661, 665 (1990).

In 1996, the commissioner issued DD 96-2 (directive), Official MassTax Guide 115-118 (West Supp. 1996), which set forth the commissioner's position as to when the ownership and use of intangible property in the Commonwealth would subject a foreign corporation to corporate excise taxes.[11] The directive states that "[t]he definition of intangible property generally includes, but is not limited to, copyrights, patents, trademarks, trade names, trade secrets, service marks, and know-how." It further provides:

> "A foreign corporation's intangible property used within Massachusetts will subject that corporation to the corporate excise when:
>
> "1. The intangible property generates, or is otherwise a source of, gross receipts within the state for the corporation, including through a license or franchise; and
>
> "2. The activity through which the corporation obtains such gross receipts from its intangible property is purposeful (e.g., a contract with an in-state company); and
>
> "3. The corporation's presence within the state, as indicated by its intangible property and its activities with respect to that property, is more than de minimis."

The board acted within its discretion in refusing to abate the penalties levied on Geoffrey. The Supreme Court's decision in *Quill* discussed a "physical-presence" requirement under the commerce clause only in the context of sales and use taxes. See *Quill Corp.* v. *North Dakota*, 504 U.S. 298, 314, 317 (1992).

---

[11]The purposes of such public written statements "are to inform Department [of Revenue] personnel and the public of Department policy and practice, thereby promoting the uniform application of the Massachusetts tax laws by the Department and assisting taxpayers in complying with the Massachusetts tax laws." 830 Code Mass. Regs. § 62C.3.1(6)(c) (1993). A directive "states the official position of the Department," and it will be used "as precedent in the disposition of cases unless and until it is revoked or modified." *Id.* at § 62C.3.1(6)(d) (1993).

Prior to the tax years at issue here, the South Carolina Supreme Court in *Geoffrey, Inc.* v. *South Carolina Tax Comm'n*, 313 S.C. 15, 23-24 (1993), addressed the same constitutional issue as presented in this case with regard to the same taxpayer under a similar factual scenario and concluded that "by licensing intangibles for use in [South Carolina] and deriving income from their use [there], Geoffrey ha[d] a 'substantial nexus' with South Carolina." In addition, the commissioner's issuance of the directive clarified the Commonwealth's tax treatment of income generated by intangible property used within Massachusetts by a foreign corporation. To the extent that Geoffrey was uncertain about its obligation to pay corporate excise taxes or disagreed with the department's position as set forth in the directive, there is no evidence in the record that it sought a letter ruling or other guidance from the department on these matters. See 830 Code Mass. Regs. § 62C.3.2 (1993) (describing purposes of and procedures for letter rulings). See also 830 Code Mass. Regs. § 63.39.1(9) (1993) (setting forth procedures for requesting nexus determination from commissioner). Contrary to Geoffrey's assertion, the issue whether TRUMI was entitled to deduct from its own taxes the royalty payments made to Geoffrey was unrelated to the issue whether Geoffrey was obligated to pay corporate excises on its Massachusetts income. We conclude that Geoffrey has not demonstrated that it acted with reasonable cause in failing to file corporate excise returns and in failing to pay taxes pursuant to G. L. c. 63, § 39. Therefore, the penalties imposed on Geoffrey by the board were properly assessed.

*Decision of the Appellate Tax*
*Board affirmed.*