2012 OK 41

**In the Matter of the Income Tax Protest of Scioto Insurance Company:**

**SCIOTO INSURANCE COMPANY,**
Appellant,

v.

**OKLAHOMA TAX COMMISSION,**
Appellee.

No. 108943.

Supreme Court of Oklahoma.

May 1, 2012.

Rehearing Denied June 11, 2012.

Timothy Manuel Larason, Anne E. Zachritz, Andrews Davis, A Professional Corporation, Oklahoma City, Oklahoma, and Paul H. Frankel, Morrison & Foerster, LLP, New York, New York, for Appellant.

Marjorie L. Welch, Interim General Counsel; Abby Dillsaver, Assistant General Counsel; Elizabeth Field, Assistant General Counsel, Oklahoma Tax Commission, Oklahoma City, Oklahoma, for Appellee.

REIF, J.

¶ 1 This case concerns the liability of Scioto Insurance Company, a Vermont corpora-

tion, for Oklahoma corporate income taxes for the years 2001 through 2005. The Oklahoma Tax Commission assessed Scioto corporate income taxes for these years based on payments it received from the use of Scioto's intellectual property by Wendy's restaurants in Oklahoma. The intellectual property in question consists of trademarks and operating practices for Wendy's restaurants.

¶ 2 In support of its assessment, the Oklahoma Tax Commission points out that the amount of money Scioto receives for use of this intellectual property is based on a percentage of the gross sales of the Wendy's restaurants in Oklahoma. The Tax Commission contends that the case of *Geoffrey, Inc. v. Oklahoma Tax Commission*, 2006 OK CIV APP 27, 132 P.3d 632, holds that this type of business connection to Oklahoma is sufficient to support taxation of an out-of-state corporation.

¶ 3 In support of its protest of the assessment, Scioto notes it was established under the laws of the State of Vermont by Wendy's International, Inc., to insure various risks of Wendy's International and its affiliates. In establishing Scioto, Wendy's International transferred the intellectual property to Scioto to meet the capitalization requirements of the State of Vermont for an insurance business. Scioto stresses that it is not in the restaurant business and has no say where a Wendy's restaurant will be located, including Oklahoma. Scioto notes that it does not provide insurance to any person or entity in Oklahoma.

¶ 4 Scioto admits that it derives income from licensing the use of the intellectual property but notes its only licensing agreement is with Wendy's International. Individual Wendy's restaurants in Oklahoma acquire the right to use the intellectual property under a sub-license with Wendy's International. Wendy's restaurants in Oklahoma pay 4% of their gross sales to Wendy's International for use of the intellectual property and Wendy's International reports such income to the Oklahoma Tax Commission. Wendy's International, in turn, pays an amount equal to 3% of such gross sales to Scioto under the licensing agreement with Scioto and deducts this 3% payment amount on its Oklahoma tax return.

¶ 5 It is clear that use of the intellectual property in question by individual Wendy's restaurants in Oklahoma has several taxable consequences. First, it produces both sales of products and income that are taxable under Oklahoma law. Second, the use of the intellectual property by Wendy's restaurants in Oklahoma plays an important role in the production of employment-based taxes. Third, the right to use the intellectual property by an individual Wendy's restaurant is subject to ad valorem taxation as personal property in the county where the restaurant is located. *See Southwestern Bell Telephone Co. v. Oklahoma State Board of Equalization*, 2009 OK 72, 231 P.3d 638. Finally, there is no question that Oklahoma can tax the value received by Wendy's International in contracting with individual Wendy's restaurants in Oklahoma to use the intellectual property.

¶ 6 What is not clear is the basis for Oklahoma to tax the value received by Scioto from Wendy's International under a licensing contract that was not made in the State of Oklahoma and no part of which was to be performed in Oklahoma. Any further transfer of the right to use the intellectual property, including sub-licensing agreements with Wendy's restaurants in Oklahoma, is the legal act and sole responsibility of Wendy's International. In addition, the obligation of Wendy's International to pay Scioto based on a percentage of sales by Wendy's restaurants in Oklahoma is not dependent upon the Oklahoma restaurants actually paying Wendy's International. Wendy's International must pay Scioto under their licensing agreement whether or not any of the Oklahoma restaurants ever pay Wendy's International.

¶ 7 Oklahoma simply has no connection to or power to regulate the licensing agreement between Scioto and Wendy's International, any more than it had a say in whether the State of Vermont should license Scioto or allow the intellectual property to be one of Scioto's capital assets. Unlike the situation in the *Geoffrey* case, Scioto is not a shell entity and the licensing agreement between Scioto and Wendy's International is not a

sham obligation to support a deduction under Oklahoma law.[1] The sum paid by Wendy's International under the licensing agreement with Scioto is a bona fide obligation, and the payments received by Scioto are a source of income for Scioto's insurance business (none of which is carried on in Oklahoma). The Oklahoma Tax Commission cannot summarily disregard the licensing agreement simply because it produces a deduction that the Commission does not like.

¶ 8 Scioto and Wendy's International, like any taxpayers, are entitled to rely on settled law in the use of their property and in ordering their affairs, to maximize any benefits allowed under the state and federal tax laws of this nation. One of the most important principles of settled law upon which a taxpayer may rely is that a state will apply its tax laws consistent with due process of law. In the case at hand, due process is offended by Oklahoma's attempt to tax an out of state corporation that has no contact with Oklahoma other than receiving payments from an Oklahoma taxpayer (Wendy's International) who has a bona fide obligation to do so under a contract not made in Oklahoma. *See Quill Corp. v. North Dakota*, 504 U.S. 298, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992). The fact that the Oklahoma taxpayer can deduct such payments in determining the Oklahoma taxpayer's income tax liability is not justification

to chase such payments across state lines and tax them in the hands of a party who has no connection to the State of Oklahoma.[2]

**CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS OPINION IS VACATED; ORDER OF THE OKLAHOMA TAX COMMISSION IS REVERSED AND REMANDED WITH INSTRUCTIONS.**

¶ 9 COLBERT, V.C.J., KAUGER, WATT, WINCHESTER, REIF, and COMBS, JJ., concur.

¶ 10 TAYLOR, C.J., and GURICH, J., dissent.

¶ 11 EDMONDSON, J., disqualified.

GURICH, J., with whom TAYLOR, C.J. joins dissenting:

¶ 1 I respectfully dissent. I would affirm the imposition of corporate income tax by the Oklahoma Tax Commission.

¶ 2 Scioto Insurance Company is a subsidiary of Wendy's International, Inc. The company is responsible for providing business interruption insurance to Wendy's and its affiliates.[1] Oldemark, LLC is a Vermont holding company whose sole purpose is to maintain ownership of Wendy's intellectual property rights.[2] Oldemark controls the

1. Geoffrey, Inc. was formed and incorporated as a part of a reorganization of its parent corporation Toys 'R' Us, Inc. The parent corporation assigned its trademarks and operating practices to Geoffrey in exchange for Geoffrey, Inc. stock. Geoffrey, Inc., in turn, licensed use of the trademarks and operating practices back to its parent corporation. The parent corporation engaged in business in Oklahoma and paid taxes on its Oklahoma derived income, but deducted the royalty paid to Geoffrey. During the tax years at issue, Geoffrey had no full-time employees, conducted its business from office space it leased from an accounting firm and its sole activity was to license the trademarks and operating practices to the parent corporation. *Geoffrey*, 2006 OK CIV APP 27, ¶ 3, 132 P.3d at 634. In contrast, Scioto is a licensed and regulated insurance company that carries on a business entirely different from Wendy's restaurant business.

2. The proper point at which Oklahoma can assess taxes on the amount that Wendy's International pays to Scioto is when those funds are in the hands of Wendy's International. If the Tax Commission believes the amount paid by Wen-

dy's International to Scioto should be taxed, then the Tax Commission should ask the Legislature to eliminate the deduction for payments made under licensing arrangements like the one in this case. While the Tax Commission is properly concerned with the taxation of business activity in Oklahoma, the Tax Commission cannot unilaterally close deduction lacunae or gaps in the revenue law with which the Commission disagrees. "[T]he proper remedy for OTC is not to have the courts expand the ... Tax Code's scope ... but rather to press for the gap's closure by the Legislature." *Globe Life & Accident Ins. Co. v. Oklahoma Tax Commission*, 1996 OK 39, ¶ 19, 913 P.2d 1322, 1329.

1. During oral argument, counsel for Scioto acknowledged the company has never paid an insurance claim.

2. Oldemark acquired the intellectual property rights through a series of corporate reorganizations, licensing agreements, and assignments, beginning in approximately 1989.

fast-food company's trademarks, copyrights, and knowledge related to opening and operating a Wendy's restaurant. In return, Oldemark receives revenue associated with the use of these intangibles by Oklahoma Wendy's franchises. Scioto is the sole member of Oldemark; therefore, the LLC is a disregarded entity for tax purposes.[3] All income of Oldemark is attributable to Scioto.

¶ 3 Pursuant to an October 2001 amended licensing agreement, Oldemark granted Wendy's the right to use and sublicense its intellectual property to affiliate-owned and franchisee-owned restaurants. In return, Wendy's paid Oldemark a license fee equal to three percent (3%) of restaurant gross sales. Wendy's sublicensed the intellectual property rights to individual franchises for a fee equal to four percent (4%) of the restaurant's gross sales.

¶ 4 Wendy's franchise disclosure documents informed prospective franchisees that Oldemark was the owner of the intellectual property. The disclosure documents also indicated that Oldemark "**records on its books the royalty income received by Wendy's from you and its other franchisees, while Wendy's serves as the collecting agent for the Oldemark royalty income.**"[4] Following receipt of royalty payments from Oklahoma franchises, Oldemark loaned the income back to Wendy's in exchange for demand notes. Wendy's claimed deductions equivalent to the three percent (3%) royalties and interest on

the notes which was paid to Oldemark.[5] The practical effect of these transactions was the virtual elimination of state income tax liability on earnings associated with licensing fees emanating from Oklahoma sales.[6]

¶ 5 For the relevant taxable periods, only Wendy's filed Oklahoma corporate income tax returns. On February 21, 2008, the Oklahoma Tax Commission (OTC) issued an assessment of corporate income tax, penalties, and interest against Scioto totaling $546,644.00. A revised assessment was issued on October 5, 2009, in the amount of $434,361.00.[7] Scioto filed a protest, alleging the company lacked minimum contacts with the State of Oklahoma and that levying a tax constituted a violation of the Commerce Clause.

## DUE PROCESS CLAUSE

¶ 6 In its first assignment of error, Scioto argues that the OTC corporate tax assessment is a violation of the Due Process Clause of the United States Constitution because the company lacks minimum contacts with Oklahoma. In *Quill Corp. v. North Dakota By and Through Heitkamp*, 504 U.S. 298, 306, 112 S.Ct. 1904, 119 L.Ed.2d 91, (1992), the Supreme Court defined the limitations placed on state taxing authorities by the Due Process Clause:

> The Due Process Clause requires some definite link, some minimum connection,

---

3. It is undisputed that Oldemark was a disregarded entity under federal law-meaning any tax obligation of the LLC became the responsibility of Scioto. Oklahoma follows the federal rule for tax treatment of a single member LLC. 68 O.S. 2011 202(j). No error is alleged.

4. Wendy's International, Inc. Franchise Offering Circular (2005) (emphasis added). This language would seem to create a direct connection between use of the intellectual property in Oklahoma through Oldemark and Scioto.

5. The dynamic behind this kind of corporate structuring to eliminate taxation was explained in a legal treatise:

   One of the standard tax-planning devices corporations have employed to reduce taxable income in states where they conduct their operations is to transfer their trademarks or trade names to an intangibles holding company (IHC) and license back the trademarks or trade names for a royal-

ty. The royalty, which is deductible to the operating company, reduces its income in the states where it carries on its business. The IHC, on the other hand, ordinarily pays no tax on its royalty income because it is taxable—or at least taxpayers so contend—only in a state that does not tax such income (e.g., Delaware).
   J. Hellerstein & W. Hellerstein, State Taxation ¶ 9.20[7][j] (3d ed.2012).

6. Examining the precise tax scheme faced in this case, the South Carolina Supreme Court noted that the "net effect of this corporate structure has been the production of 'nowhere' income that escapes all state income taxation." *Geoffrey, Inc. v. South Carolina Tax Comm'n*, 313 S.C. 15, 437 S.E.2d 13, 15, n. 1 (1993) (citing Rosen, *Use of a Delaware Holding Company to Save State Income Taxes*, 20 Tax Adviser 180 (1989)).

7. This change reflected an adjustment to coincide with a federal amortization deduction.

between a state and the person, property or transaction it seeks to tax, and that the income attributed to the state for tax purposes must be rationally related to values connected with the taxing State. (internal citations & quotations omitted).

However, physical presence is not mandatory to establish a constitutionally sufficient connection to meet the minimum contacts requirements of the Due Process Clause. When a taxpayer "purposefully avails itself of the benefits of an economic market," exercise of *in personam* jurisdiction will not offend due process, "even if [the taxpayer] has no physical presence in the state." *Id.* at 307–308, 112 S.Ct. 1904. In this case, Scioto authorized the use of Wendy's intellectual property rights in all fifty (50) states, including Oklahoma. Scioto directed its activities at the residents of Oklahoma and benefitted from the economic contact created via the Wendy's name and proprietary information. To put it another way, every hamburger sold in Oklahoma by Wendy's had a direct economic benefit to Scioto.

¶ 7 The first state court case to address the interplay between the Due Process Clause and taxation of an out-of-state corporation's income attributable to intellectual property was decided by the South Carolina Supreme Court in *Geoffrey, Inc. v. South Carolina Tax Comm'n*, 313 S.C. 15, 437 S.E.2d 13 (1993). Geoffrey, Inc. was an entity created and solely owned by Toys R Us, Inc. *Id.* at 15. The parent company transferred its intellectual property rights to Geoffrey, who in turn, allowed the toy company to utilize those rights and business know-how in exchange for a payment equal to one percent (1%) of net sales. *Id.* Toys R Us filed income tax returns, but offset its corporate revenue with a deduction equivalent to the one percent (1%) license fee paid to Geoffrey. *Id.* The South Carolina taxing authority issued an assessment, and Geoffrey protested. *Id.* Finding Geoffrey had a sufficient connection to the state, the court reject-

ed any claim that taxation violated the Due Process Clause:

> Geoffrey's business is the ownership, licensing, and management of trademarks, trade names, and franchises. By electing to license its trademarks and trade names for use by Toys R Us in many states, Geoffrey contemplated and purposefully sought the benefit of economic contact with those states. Geoffrey has been aware of, consented to, and benefitted from Toys R Us's use of Geoffrey's intangibles in South Carolina. Moreover, Geoffrey had the ability to control its contact with South Carolina by prohibiting the use of its intangibles here as it did with other states. We reject Geoffrey's claim that it has not purposefully directed its activities toward South Carolina's economic forum and hold that by licensing intangibles for use in South Carolina and receiving income in exchange for their use, Geoffrey has the minimum connection with this State that is required by due process.

*Id.* at 16. Geoffrey sought review in the United States Supreme Court; however, certiorari was denied. *Geoffrey, Inc. v. South Carolina Tax Comm'n*, 313 S.C. 15, 437 S.E.2d 13 (1993), *cert. denied* 510 U.S. 992, 114 S.Ct. 550, 126 L.Ed.2d 451 (1993).

¶ 8 Scioto intentionally placed Wendy's intellectual property in the stream of Oklahoma commerce, and purposefully sought the advantages of economic contact with our state. The income generated from restaurant sales in Oklahoma was recorded on the books of Oldemark. This economic presence was sufficient contact to satisfy the fundamental principles mandated by the Due Process Clause.

## COMMERCE CLAUSE

¶ 9 Scioto also challenges Oklahoma's assessment of income tax based on an alleged violation of the Commerce Clause of the U.S. Constitution.[8] Although review of the constitutional constraints on state income taxation

---

8. The Commerce Clause contains more than an affirmative grant of power; it also includes a negative component, often referred to as the dormant Commerce Clause. *KFC Corp. v. Iowa Dept. of Revenue*, 792 N.W.2d 308, 313 (Iowa 2010). This aspect of the clause has been construed as a limit on the power of states to impose taxes, even in the absence of affirmative acts of Congress. *Id.*

under the Commerce Clause is similar to the analysis required by the Due Process Clause, the two are not identical. *Quill*, 504 U.S. at 305, 112 S.Ct. 1904. The validity of a state tax under the Commerce Clause is measured according to a four-part test:

> Under *Complete Auto*'s four-part test, we will sustain a tax against a Commerce Clause challenge so long as the tax (1) is applied to an activity with a substantial nexus with the taxing State, (2) is fairly apportioned, (3) does not discriminate against interstate commerce, and (4) is fairly related to the services provided by the State.

*Quill*, 504 U.S. at 311, 112 S.Ct. 1904, (citing *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279, 97 S.Ct. 1076, 51 L.Ed.2d 326, (1977)); *see also In The Matter Of The Assessment Of Personal Property Taxes Against Missouri Gas Energy, A Division Of Southern Union Company, For Tax Years 1998, 1999, and 2000*, 2008 OK 94, ¶ 43, 234 P.3d 938, 953. The first and fourth prongs of the *Complete Auto* analysis limit a state's ability to impose taxation which would burden interstate commerce. *Quill*, 504 U.S. at 313, 112 S.Ct. 1904. The second and third requirements prohibit taxation that places an unfair share of the tax burden on interstate commerce. *Id.*

¶ 10 Scioto suggests that taxation by Oklahoma would offend the protections provided by the Commerce Clause because the company lacks a substantial nexus with the state. The Oklahoma Court of Civil Appeals rejected the application of a bright-line physical presence requirement. *Geoffrey, Inc., v. Oklahoma Tax Commission*, 2006 OK CIV APP 27, ¶ 19, 132 P.3d 632, 638–639 (declining to apply the physical presence test required for sales/use tax and finding the real source of the holding company's income was customers from Oklahoma).[9] Since 1996, an OTC regulation put foreign corporations on notice that the licensing of intangible property rights in this state creates a nexus sufficient to subject the entity to income taxation.[10] I agree with the *Geoffrey* analysis and would hold that the substantial nexus test was satisfied because Scioto's receipt of royalty income was directly connected to the use of its intellectual property in Oklahoma. The use of the Wendy's name and other intangibles in Oklahoma created an economic presence justifying taxation in this state. The majority of jurisdictions addressing the Commerce Clause and taxation of royalties received by an out-of-state holding company for use of the company's intellectual property have rejected the physical presence test and allowed imposition of state income tax based on an economic nexus.[11]

**9.** By a vote of 7–1 this Court denied certiorari in *Geoffrey v. Oklahoma Tax Commission*, Supreme Court Case No. TC–99,938, on March 20, 2006.

**10.** Okla. Admin. Code § 710:50–17–3(10) (1996). The relevant section, titled "What constitutes 'Nexus,'" reads in relevant part:

If a corporation has one or more of the following activities in Oklahoma, it is considered to have "nexus" and shall be subject to Oklahoma income taxes:
(9) Leasing of tangible property and *licensing of intangible rights for use in Oklahoma.* (emphasis added).
Other states have enacted similar administrative regulations. *see e.g.*, Fla. Admin. Code Ann. R. 12C–1.011(1)(p)(1)(2006); Iowa Admin. Code 701–52.1(4)(422), Example 7 (Westlaw 2008); Mass. Dep't of Revenue, Corporate Excise DOR Directive 96–2, July 3, 1996.

**11.** *See e.g., KFC v. Iowa Dept. of Revenue*, 792 N.W.2d 308, 328 (Iowa 2010) (concluding Commerce Clause is not offended based on Iowa income tax on royalties earned by allowing use of intangibles within the State of Iowa); *Geoffrey,*

*Inc. v. Comm'r of Revenue*, 453 Mass. 17, 899 N.E.2d 87, 92 (2009) (applying substantial nexus test and rejecting Commerce Clause challenge based on income earned through use of intangible property in state); *Lanco, Inc. v. Director, Div. of Taxation*, 379 N.J.Super. 562, 879 A.2d 1234, 1242 (N.J.Super.Ct.App.Div.2005) (finding physical presence of Delaware holding company was not mandatory to impose income tax associated with licensing fees attributable to intellectual property targeting New Jersey consumers); *Geoffrey, Inc. v. South Carolina Tax Comm'n*, 437 S.E.2d at 18–19 (holding that by licensing intangibles for use in South Carolina, holding company had substantial nexus, such that taxing royalties from intellectual property would not violate the dormant Commerce Clause); *A & F Trademark, Inc. v. Tolson*, 167 N.C.App. 150, 605 S.E.2d 187, 195 (2004), *cert. denied*, 546 U.S. 821, 126 S.Ct. 353, 163 L.Ed.2d 62 (2005) (determining that "where a wholly-owned subsidiary licenses trademarks to a related retail company operating stores located within North Carolina, there exists a substantial nexus with the State sufficient to satisfy the Commerce Clause"); *Tax Comm'r of State v. MBNA America Bank*, 220

¶ 11 Scioto also maintains that the income tax imposed by Oklahoma was not fairly apportioned. The OTC applied 68 O.S.Supp. 2010 2358(A)(5) and prior opinions from this Court to determine whether Scioto's income was derived from a unitary business enterprise. The OTC sufficiently established that Wendy's, Scioto, and Oldemark were part of a unitary business enterprise. The motivation behind this corporate anatomy was to shelter royalties generated from use of Wendy's trademarks and the company's proprietary information throughout the United States. The OTC correctly imposed corporate income tax.

## CONCLUSION

¶ 12 Electronic commerce continues to expand, and increasingly, interstate and international businesses have significant economic impact in a state without having a physical presence. While new legal concepts are challenging established law, the taxation of intangibles is not a recent phenomenon. Oklahoma courts and the OTC are in harmony.[12] Scioto intentionally placed its property into the stream of Oklahoma commerce, realizing the benefits and protections afforded by the people and laws of this state. The presence of Scioto's intellectual property within Oklahoma is a sufficient nexus for the imposition of corporate income taxes. As such, I would affirm the determination by the OTC and authorize the imposition of income tax against Scioto.

W.Va. 163, 640 S.E.2d 226, 234 (2006) (rejecting physical presence test and noting such a rigid interpretation of the Commerce Clause "makes little sense in today's world"); *Comptroller of the Treasury v. SYL, Inc.,* 375 Md. 78, 825 A.2d 399, 415 (App.2003) (recognizing that entities holding intellectual property for parent company "had no real economic substance," and allowing taxation of a portion of income attributable to parent corporations' business in the state); *see also Surtees v. VFJ Ventures, Inc.,* 8 So.3d 950, 976–981 (Ala.Ct.App.2008), *cert. denied,* ── U.S. ──, 129 S.Ct. 2051, 173 L.Ed.2d 1132 (2009); *Secretary, Dept. of Revenue, State of La. v. GAP (Apparel), Inc.,* 886 So.2d 459, 462 (La.Ct.App.2004); *Bridges, Secretary of Dept. of Revenue, State v. Geoffrey, Inc.,* 984 So.2d 115, 128 (La.Ct.App. 2008).

