961 A.2d 738 (2008)
404 N.J. Super. 287
PRAXAIR TECHNOLOGY, INC., a Delaware Corporation, Plaintiff-Appellant,
v.
DIRECTOR, DIVISION OF TAXATION, Defendant-Respondent.
DOCKET NO. A-6262-06T3.
Superior Court of New Jersey, Appellate Division.
Argued September 24, 2008.
Decided December 15, 2008.
Paul H. Frankel (Morrison & Foerster), New York City, argued the cause for appellant (Mitchell A. Newmark (Morrison & Foerster), attorney; Mr. Newmark and Mr. Frankel, on the brief).
Marlene G. Brown, Senior Deputy Attorney General, argued the cause for respondent (Anne Milgram, Attorney General, attorney; Melissa H. Raksa, Deputy Attorney General, of counsel; Ms. Brown, on the brief).
Before Judges A.A. RODRÍGUEZ, KESTIN and NEWMAN.
The opinion of the court was delivered by
KESTIN, J.A.D. (retired and temporarily assigned on recall).
Plaintiff, Praxair Technology, Inc. (PTI), a Delaware corporation with its *739 principal place of business in Connecticut, appeals from the Tax Court's June 27, 2007 order granting partial summary judgment to defendant, the Director of the Division of Taxation (the Director), regarding PTI's liability under the Corporation Business Tax (CBT), N.J.S.A. 54:10A-1 through -41, for the 1994-1996 tax years. The remainder of the complaint regarding plaintiff's liability under the CBT was dismissed. The Director had also imposed a late-filing penalty and a post-amnesty penalty on PTI's initial challenge to the assessment of its tax liability for a longer period, tax years 1994-1999. The Tax Court, in upholding the imposition of the tax for 1994-1996, also upheld the late-filing and post-amnesty penalties for that period as well as the ensuing years that had initially been challenged.
The Tax Court judge set out the reasons for his decision in a letter opinion dated June 18, 2007; and he amplified those reasons in an August 13, 2007 memorandum issued pursuant to R. 2:5-1(b). We reverse the decision with respect to plaintiff's tax liability for 1994-96, and remand for a recalculation of plaintiff's liability for the penalty assessments post-1996, in the light of our decision on the basic tax liability issue.
The complaint contained seven claims for relief. As characterized by the judge in his letter opinion, the cross-motions for partial summary judgment presented issues regarding PTI's
challenges [to] three aspects of the Director['s]... Final Determination: (1) The March 12, 2002 assessment of a corporate business tax for the audit years 1994-1996 under N.J.S.A. 54:10A-1 after the addition of an example in 1996 to N.J.A.C. 18:7-1.9; (2) the assessment of a[30%] late filing penalty; and (3) the assessment of a [5%] post-amnesty penalty.
The order disposing of the motions, and the letter opinion, both noted the parties' stipulation that the remaining issues in the case were governed by the outcome of Lanco, Inc. v. Director, Division of Taxation, 188 N.J. 380, 908 A.2d 176 (2006), cert. denied, ___ U.S. ___, 127 S.Ct. 2974, 168 L.Ed.2d 702 (2007). Accordingly, the order resolving the motions was, as it noted, a final disposition of the case.
The background facts recited by the Tax Court judge in his letter opinion are undisputed.
PTI is, and at all times during the relevant audit period of 1994-1999 was, a wholly owned subsidiary of Praxair, Inc. (hereinafter "Parent"). PTI was incorporated, conducted all business, and placed all offices outside of New Jersey. PTI had no employees working in or conducting business in New Jersey. From 1994-1999, PTI owned various patents, trade secrets, and technologies relating to the manufacture and use of certain industrial gases. These intangible properties were licensed by PTI to Parent[,] and Parent implemented the properties at various facilities in the United States, including facilities in New Jersey. PTI received substantial licensing fees from Parent for the use of these properties. In addition, PTI received a portion of the profits from the use of the properties and a portion of any fee paid to Parent as part of third-party relicensing. PTI's practice of licensing these properties to Parent did not change throughout the audit period.
PTI's brief illuminates the background further.
[Parent] used the licensed technology to manufacture gases at [Parent's] domestic facilities, including those facilities located in New Jersey, and paid PTI license *740 fees in accordance with [their a]greement.
PTI did not maintain an office in New Jersey, did not own or lease property or have employees in New Jersey, and did not otherwise have a physical presence in New Jersey.
PTI has never had a physical presence in New Jersey and did not file CBT returns for the 1994 through 1999 years. [Parent] did have a presence in New Jersey and did file CBT returns.
Of course, the Tax Court, and we, are bound by the New Jersey Supreme Court's decision in Lanco, supra, 188 N.J. 380, 908 A.2d 176 (2006), affirming 379 N.J.Super. 562, 879 A.2d 1234 (App.Div. 2005), reversing 21 N.J. Tax 200 (2003). At the time of the Tax Court decision in this matter, the United States Supreme Court had not yet ruled upon the petition for certiorari in Lanco. It has since done so, denying the petition in an order published at ___ U.S. ___, 127 S.Ct. 2974, 168 L.Ed.2d 702 (2007).
In rejecting PTI's argument based on Quill Corp. v. North Dakota, 504 U.S. 298, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992), and other cases, that we and the New Jersey Supreme Court had erred in Lanco, and that the Supreme Court of South Carolina had likewise erred in Geoffrey, Inc. v. South Carolina Tax Comm'n, 313 S.C. 15, 437 S.E.2d 13, cert. denied, 510 U.S. 992, 114 S.Ct. 550, 126 L.Ed.2d 451 (1993), the Tax Court judge regarded "the language of the Quill opinion itself [to] limit[ ] its application to sales and use tax matters." A reading of other pertinent cases we referred to and relied on in Lanco, supra, 379 N.J.Super. at 570, 879 A.2d 1234, underlines the respectability of that view.
Nevertheless, the judge fell into error when he went on to state:
In addition, the [United States] Supreme Court's continuous and constant unanimous refusal to grant certiorari in income tax nexus matters, despite several opportunities to do so, signals to this court that a line has been drawn in reasoning between sales and use tax cases and income tax cases.
This articulated sense, attributing substantive meaning to denials of certiorari, is manifestly incorrect, and should never contribute to a court's decisional rationale. A denial of certiorari "does not constitute either a decision on the merits of the questions presented, ... or an appraisal of their importance." Brown v. Texas, 522 U.S. 940, 942, 118 S.Ct. 355, 356, 139 L.Ed.2d 276, 277-78 (1997). It "carries with it no implication whatever regarding the Court's views on the merits of a case[.]" Maryland v. Baltimore Radio Show, Inc., 338 U.S. 912, 919, 70 S.Ct. 252, 255, 94 L.Ed. 562, 566 (1950). See also, e.g., Martin v. Texas, 382 U.S. 928, 929, 86 S.Ct. 307, 15 L.Ed.2d 340, 341 (1965).
We take, as a given, the substantive rule underlying the decision in Lanco, that the State may tax income generated in the State by intangible property, even where the assessed corporation, itself, lacks a physical presence in the State. This rule does not dispose of the narrower, focal issue in this case, however: whether the State, in implementing its power to tax, did so in a sustainable way.
The statute enacting this taxing power is N.J.S.A. 54:10A-2, a section of the Corporation Business Tax Act of 1945. That provision has been amended twice since it was initially adopted: by L. 1973, c. 95, § 1; and by L. 2002, c. 40, § 1. Such changes as were wrought by the 1973 amendment do not bear upon the issues in this case; but the 2002 amendment furnishes a critical ingredient of plaintiff's argument herein.
*741 The pertinent provisions of N.J.S.A. 54:10A-2, with the language added by the 2002 amendment highlighted, authorize the imposition of "an annual franchise tax" on "[e]very domestic or foreign corporation"
for the privilege of having or exercising its corporate franchise in this State, or for the privilege of deriving receipts from sources within this State, or for the privilege of engaging in contacts within this State, or for the privilege of doing business, employing or owning capital or property, or maintaining an office, in this State.
Plaintiff argues, inter alia, that the added language denoted an expansion of the statute. On the premise that "`ordinarily, a change in legislative language signifies a purposeful alteration of the substance of the law[,]' State v. Foglia, 182 N.J.Super. 12, 16, 440 A.2d 16 (App.Div.1981) (citation omitted), appeal dismissed, 91 N.J. 523, 453 A.2d 848 (1982)[,]" plaintiff contends that "[a] clear expression of legislative intent to subject corporations having no physical presence in the State to the CBT did not occur until 2002." (Pb14)
The Director argues that the "doing business" and "employing property" standards of the statute "`were in existence and [in] full force and effect' [quoting the Tax Court judge's amplifying memorandum] long before the 1994-1996 taxable period.... In fact, N.J.S.A. 54:10A-2 has always contained these elements, and they have never been amended, including by the 2002 amendment cited by [PTI]." (Db12)
Notwithstanding that the 1997-1998 tax year in question in Lanco also predated the 2002 amendment to N.J.S.A. 54:10A-2, see Lanco, supra, 21 N.J. Tax at 203-04, n. 1, the issue posed herein regarding the scope of the statute was not addressed by any of the courts in Lanco. Apparently, it was not raised by either party or amicus curiae in that case. Nevertheless, the New Jersey Supreme Court's decision in Lanco, some four years after the statute had been amended, precludes any consideration by us of plaintiff's argument addressing the scope of the statute.
An additional layer of complexity arises in this case, however, from the regulatory scheme that implements N.J.S.A. 54:10A-2. Before November 4, 1996, N.J.A.C. 18:7-1.9(b) provided the practical definition of "doing business", a term undefined in the statute. The regulation stated:
Whether a foreign corporation is doing business in New Jersey is determined by the facts in each case. Consideration is given to such factors as:
1. The nature and extent of the activities of the corporation in New Jersey;
2. The location of its offices and other places of business;
3. The continuity, frequency and regularity of the activities of the corporation in New Jersey;
4. The employment in New Jersey of agents, officers and employees;
5. The location of the actual seat of management or control of the corporation.
[N.J.A.C. 18:7-1.9(b).]
On November 4, 1996, a clause was appended to the regulation immediately following the listing of the five factors:
Example
Foreign corporation R holds trademarks that were assigned to it by its parent corporation. R receives fees as a result of licensing those trademarks to certain New Jersey companies for use in New Jersey. R is subject to the corporation business tax on its apportioned income as a result of its trademark licensing activities.

*742 [Ibid.]
Although the pre-2002 text of the statute, and the pre-1996 terms of the regulation provide some support for the Director's argument that the activities at issue were arguably within the ambit of taxable activity under the CBT, it is apparent that sufficient doubt about the clarity of that conclusion existed to engender the perceived need for the explanatory example appended to the regulation in November 1996 and the specific terms added to the statute as of July 2, 2002. Although this court and the Supreme Court of New Jersey both held, conceptually, in Lanco, that the State was, as a general rule, empowered to levy the tax in the circumstances presented, neither we, in reversing the Tax Court's contrary decision therein, nor the Supreme Court in affirming our disposition, addressed the Tax Court's observation that the addition of the "example" to the regulation represented a change in the taxing policies of the Division. See Lanco, 21 N.J. Tax at 218.
The questions in Lanco arose from a tax assessment for 1997-1998, a year after the revision of the regulation was promulgated with the addition of the clarifying "example", albeit before the 2002 amendment that broadened the statutory language. Thus, although the ultimate result in Lanco must be taken to resolve any question regarding the scope of the statute relative to the activities of this plaintiff, a question remains with respect to the scope of the modified regulation, i.e., concerning the taxing years antedating the regulatory modification.
We hold that the Tax Court erred in deciding the question of plaintiff's tax liability for pre-1996 business activities based solely or primarily on the result reached in Lanco (which addressed only the reach of the amended statute), with insufficient regard for the impact of the 1996 changes to the regulation that applied, which the Division itself cited as authority for the decision to assess the taxes at issue here.
As regards the tax liability of a corporation in plaintiff's position, there can be no clearer indication of the pre-1996 understanding that prevailed in the subject matter area than the perceived need to add the clarifying example to N.J.A.C. 18:7-1.9(b), the regulation that governed. Plaintiff does not contend that it is not bound by the broadened understanding of the regulation's impact effected by the 1996 modification; only that it cannot be bound by the broader impact before the scope of the tax was clarified by the change. We accept that argument as a logical application of a principle articulated in Metromedia v. Director, Division of Taxation, 97 N.J. 313, 337, 478 A.2d 742 (1984), proscribing retroactive application except by expressed legislative design of any standard that must be articulated via a properly promulgated regulation rather than in a less formal change of policy, see id. at 331-32, 478 A.2d 742. See also In re Progressive Casualty Ins. Co., 307 N.J.Super. 93, 100-101, 704 A.2d 562 (App.Div.1997); Frank A. Greek & Sons v. Township of South Brunswick, 257 N.J.Super. 94, 105, 607 A.2d 1359 (App. Div.), certif. denied, 130 N.J. 602, 617 A.2d 1223 (1992), cert. denied, 507 U.S. 1031, 113 S.Ct. 1848, 123 L.Ed.2d 472 (1993).
Because we have concluded that plaintiff cannot be held liable for the imposition of the tax for 1994-1996, it follows that plaintiff cannot be liable for the penalties associated with those years. Nevertheless, as we have noted, plaintiff initially challenged its tax liability for the 1994-1999 tax years. The penalties imposed and ultimately upheld by the Tax Court reflected that longer period of tax liability. Plaintiff's exposure *743 to penalties associated with the post-1996 period alone remains to be determined. We remand so that the Tax Court may decide, in the circumstances, which, if any, penalties should be assessed and, if so, calculate what their amounts should be.
Reversed and remanded.