988 A.2d 92

PRAXAIR TECHNOLOGY, INC., A DELAWARE CORPORATION, PLAINTIFF–RESPONDENT AND CROSS–APPELLANT, v. DIRECTOR, DIVISION OF TAXATION, DEFENDANT–APPELLANT AND CROSS–RESPONDENT.

Argued October 26, 2009—Decided December 15, 2009.

---

128

*Marlene G. Brown,* Senior Deputy Attorney General, argued the cause for appellant and cross-respondent (*Anne Milgram,* Attorney General of New Jersey, attorney; *Lewis A. Scheindlin,* Assistant Attorney General, of counsel).

*Paul H. Frankel,* argued the cause for respondent and cross-appellant (*Morrison & Foerster,* attorneys; *Mr. Frankel* and *Mitchell A. Newmark,* on the briefs).

Justice RIVERA–SOTO delivered the opinion of the Court.

This appeal presents a narrow question: whether, in the circumstances presented, an out-of-state taxpayer is liable for New Jersey's corporate business tax for the years 1994–1996. The Director of the Division of Taxation asserted, and the Tax Court agreed, that the taxpayer's business activities were subject to New Jersey's Corporation Business Tax Act of 1945, *N.J.S.A.* 54:10A–1 to –41, and that the 1996 addition of an example to the applicable regulation effected no change in tax policy or obligations. Conceding its business activities clearly were subject to New Jersey's corporate business tax after the example was included in the governing regulations in 1996, the taxpayer nevertheless maintained, and the Appellate Division concurred, that the addition of that example expanded the reach of New Jersey's corporate business tax and, hence, the taxpayer "cannot be bound by the broader impact [of the tax] before the scope of the tax was clarified by the change [to the regulation]." *Praxair Tech., Inc. v. Dir., Div. of Taxation,* 404 *N.J.Super.* 287, 294, 961 *A.*2d 738 (App.Div.2008).

We reject the notion that the scope of a taxing statute somehow can be expanded by the adoption of or amendment to a regulation, a cornerstone of the taxpayer's and the Appellate Division's reasoning. Viewing the taxpayer's corporate business tax obligations, as we must, through the prism of the duly adopted taxing legislation, we conclude that the taxpayer's 1994–1996 business activities within New Jersey were subject to New Jersey's corporate business tax.

I.

The relevant facts are not contested. Plaintiff Praxair Technology, Inc.—formerly known as Union Carbide Industrial Gases Technology Corp.—is a Delaware corporation that maintains its principal place of business in Connecticut. It is engaged in the business of owning certain intellectual property, in the form of patents, trade secrets and technology. That property relates both

to the equipment for the manufacture as well as to the manufacturing and use of several industrial gases, including oxygen, nitrogen, argon, helium, carbon monoxide, and hydrogen. Plaintiff does not manufacture any of those gases; it exists only to own those patents and to license their use to its corporate affiliates.

Plaintiff is a subsidiary of Praxair, Inc.—formerly known as Union Carbide Industrial Gases, Inc.—a company engaged in the business of manufacturing and selling certain industrial gases throughout the United States, including New Jersey. In 1989, plaintiff and its parent corporation entered into a non-exclusive technology license agreement, thereby allowing the parent to manufacture gases using plaintiff's intellectual property for a fee. Thereafter, and specifically during the period from 1994 to and including 1999, plaintiff's parent used plaintiff's intellectual property in its manufacturing facilities in New Jersey, and paid licensing fees to plaintiff therefor. Although, during that 1994–1999 period, plaintiff's parent duly filed its New Jersey corporate business tax returns and paid its New Jersey corporate business taxes, plaintiff never filed New Jersey corporate business tax returns or paid any New Jersey corporate business tax during that period.

In 2002, the Director of the Division of Taxation issued a notice of assessment to plaintiff. The notice explained that plaintiff was liable for New Jersey's corporate business tax for each of the 1994–to–1999 years, together with interest and late filing penalties, aggregating $2,184,602.86. In 2005, after the administrative review process was completed, the Director issued a final determination that affirmed the initial notice of assessment and imposed additional interest and penalties, for an aggregate assessment of $2,950,187.59.

Plaintiff filed a complaint before the Tax Court and, once the issues were joined, the parties filed cross-motions for summary judgment. Agreeing that plaintiff's underlying obligation to pay New Jersey's corporate business tax was governed by *Lanco, Inc. v. Dir., Div. of Taxation,* 188 *N.J.* 380, 908 *A.*2d 176 (2006), *cert.*

*denied,* 551 *U.S.* 1131, 127 *S.Ct.* 2974, 168 *L.Ed.2d* 702 (2007), the parties—as noted in the Tax Court's letter opinion—nevertheless litigated three issues: "(1) [t]he assessment of a corporate business tax for the audit years 1994–1996 under *N.J.S.A.* 54:10A–1, after the addition of an example in 1996 to *N.J.A.C.* 18:7–1.9; (2) the assessment of a late filing penalty; and (3) the assessment of a post-amnesty penalty." [1]

In respect of the first issue, the Tax Court noted that *N.J.S.A.* 54:10A–2 provides the taxing authority applicable to plaintiff. During the time periods relevant here, that statute provided:

> *Every* domestic or *foreign corporation which is not hereinafter exempted shall pay an annual franchise tax* for the year 1946 and each year thereafter, as hereinafter provided, for the privilege of having or exercising its corporate franchise in this State, or *for the privilege of doing business,* employing or owning capital or property, or maintaining an office, *in this State.* And such franchise tax shall be in lieu of all other State, county or local taxation upon or measured by intangible personal property used in business by corporations liable to taxation under this act[.]
>
> [*N.J.S.A.* 54:10A–2 (emphasis supplied).] [2]

---

[1] In addition to the imposition of interest on the tax due and not paid, the Tax Court upheld the imposition of a 25% late filing penalty, under *N.J.S.A.* 54:49–4, as well as a post-tax amnesty 5% penalty, as separately authorized by *N.J.S.A.* 54:53–18(b). Based on its determination that plaintiff was not liable for the corporate business tax during the 1994–1996 tax years, the Appellate Division did not address the propriety of the imposition of either penalty. Instead, it remanded the case "so that the Tax Court may decide, in the circumstances, which, if any, penalties should be assessed and, if so, calculate what their amounts should be." *Praxair Tech., Inc., supra,* 404 *N.J.Super.* at 295, 961 *A.2d* 738. In light of our determination in respect of plaintiff's corporate business tax liability for the 1994–1996 tax years, we remand plaintiff's challenges to the imposition of the late filing and post-tax amnesty penalties to the Appellate Division for its plenary consideration of those questions.

[2] *N.J.S.A.* 54:10A–2 was amended in 2002; it now reads as follows:

> Every domestic or foreign corporation which is not hereinafter exempted shall pay an annual franchise tax for each year, as hereinafter provided, for the privilege of having or exercising its corporate franchise in this State, or for the privilege of deriving receipts from sources within this State, or for the privilege of engaging in contacts within this State, or for the privilege of doing business, employing or owning capital or property, or maintaining an office, in this State. And such franchise tax shall be in lieu of all other

The Tax Court explained that *"N.J.A.C.* 18:7–1.9 ... constitutes the regulation that interprets the meaning of 'doing business' under *N.J.S.A.* 54:10A–2." The court highlighted that, prior to the 1996 addition of an example to that regulation, the regulation affirmatively provided that

(a) The term "doing business" is used in a comprehensive sense and includes all activities which occupy the time or labor of men for profit.

1. Regardless of the nature of its activities, every corporation organized for profit and carrying out any of the purposes of its organization within the State shall be deemed to be "doing business" for the purposes of this Act.

2. In determining whether a corporation is "doing business", it is immaterial whether its activities result in a profit or a loss.

(b) Whether a foreign corporation is doing business in New Jersey is determined by the facts in each case. Consideration is given to such factors as:

1. The nature and extent of the activities of the corporation in New Jersey;

2. The location of its offices and other places of business;

3. The continuity, frequency and regularity of the activities of the corporation in New Jersey;

4. The employment in New Jersey of agents, officers and employees;

5. The location of the actual seat of management or control of the corporation.

[*N.J.A.C.* 18:7–1.9(a) and (b).]

It recounted that, in 1996, an example was added to that regulation, immediately following subsection (b). That example stated as follows:

Example

Foreign corporation R holds trademarks that were assigned to it by its parent corporation. R receives fees as a result of licensing those trademarks to certain New Jersey companies for use in New Jersey. R is subject to the corporation

State, county or local taxation upon or measured by intangible personal property used in business by corporations liable to taxation under this act. [*L.* 2002, *c.* 40 § 1, eff. July 2, 2002 (added language underscored; deletions omitted).]

The 2002 amendments to *N.J.S.A.* 54:10A–2 do not expand the reach of and are consistent with the earlier version of the Corporation Business Tax Act. Both versions command the same conclusion: the tax avoidance scheme adopted by plaintiff here—whereby a subsidiary/licensor licenses intellectual property to a parent/licensee for use in New Jersey—plainly results in New Jersey corporate business tax liability to both the parent licensee and the subsidiary/licensor.

business tax on its apportioned income as a result of its trademark licensing activities.

[*N.J.A.C.* 18:7–1.9, as amended effective Nov. 4, 1996.]

Applying a plain language analysis to *N.J.S.A.* 54:10A–2, the Tax Court concluded that it "clearly applies to [plaintiff] without the assistance of the regulation." It rejected outright plaintiff's claim that the 1996 adoption of the foregoing example somehow expanded the Director's taxing powers, and found plaintiff subject to New Jersey's corporation business tax for the years in question. Plaintiff concedes that its business activities in New Jersey plainly were subject to the corporate business tax after the example was added to the regulation.[3]

Conceding that it was obligated to pay New Jersey's corporate business tax for any period after that example was added, but rejecting any obligation to pay that tax for any period prior to the addition of that example, plaintiff appealed. The Appellate Division reversed. *Praxair Tech., Inc., supra,* 404 *N.J.Super.* at 295, 961 *A.*2d 738. According to the Appellate Division, *Lanco, supra,* stands for the proposition that "the State may tax income generated in the State by intangible property, even where the assessed corporation, itself, lacks a physical presence in the State." *Id.* at 291, 961 *A.*2d 738.[4] It explained, however, that "[t]his rule does

_____

[3] By a later addendum to its letter opinion, the Tax Court noted that

[i]n its determination that the plaintiff was subject to the assessment of a corporate business tax for the audit years in question, the court's finding was grounded upon the fact that the plaintiff, under *N.J.S.A.* 54:10A–2, was "doing business" in the state, in that the applicable statutory language, i.e.[,] "doing business," and its implementing regulation, particularly *N.J.A.C.* 18:7–1.9(a) and (b), were in existence and full force and effect not only prior to the 1996 example being added to the regulation, but the statutory language of "doing business" (and its implementing regulation) was not the subject of the 2002 statutory amendment and predated that amendment.

The outcome of this case is unaffected by that addendum.

[4] More specifically, *Lanco, supra,* 188 *N.J.* at 383, 908 *A.*2d 176, upheld the determination of the Appellate Division that "the physical presence requirement applicable to use and sales taxes is not applicable to income tax and that the New Jersey [Corporation Business] Tax may be constitutionally applied to

not dispose of the narrower, focal issue in this case, however: whether the State, in implementing its power to tax, did so in a sustainable way." *Ibid.* The panel concluded that "sufficient doubt about the clarity of [the Director's] conclusion [that plaintiff's business activities were subject to the corporate business tax] existed to engender the perceived need for the explanatory example appended to the regulation in November 1996 and the specific terms added to the statute as of July 2, 2002." *Id.* at 293, 961 A.2d 738. It thus held that "the Tax Court erred in deciding the question of plaintiff's tax liability for pre–1996 business activities" because it had given "insufficient regard for the impact of the 1996 changes to the regulation that applied[.]" *Id.* at 294, 961 A.2d 738. The Appellate Division reasoned that "there can be no clearer indication of the pre–1996 understanding that prevailed in the subject matter area than the perceived need to add the clarifying example to *N.J.A.C.* 18:7–1.9(b), the regulation that governed." *Ibid.*

The Director filed a petition for certification and plaintiff filed a cross-petition for certification. We granted both petitions. *Praxair Tech., Inc. v. Dir., Div. of Taxation,* 199 N.J. 130, 970 A.2d 1047 (2009). For the reasons that follow, we reverse the judgment of the Appellate Division, reinstate the judgment of the Tax Court, and remand the case to the Appellate Division for consideration of plaintiff's claims concerning the imposition of the late filing penalty and the post-tax amnesty penalty.

## II.

According to plaintiff, the 1996 addition of an example to the regulation, *N.J.A.C.* 18:7–1.9(b)—which precisely mirrored the tax avoidance relationship plaintiff and its corporate parent intentionally had developed—constituted a change in taxing policy that

_____

income derived by plaintiff from licensing fees attributable to New Jersey." *Lanco, Inc. v. Dir., Div. of Taxation,* 379 *N.J.Super.* 562, 573, 879 A.2d 1234 (App.Div.2005).

broadened the scope of the corporate business tax under *N.J.S.A.* 54:10A–2. Citing *Metromedia, Inc. v. Dir., Div. of Taxation,* 97 *N.J.* 313, 478 *A.*2d 742 (1984), plaintiff contends that the 1996 addition of the example to the regulation only may be applied prospectively and, hence, it was not subject to the corporate business tax during the years 1994 to 1996, inclusive. In contrast, it is the position of the Director that the 1996 addition of an example to the regulation effected no change in policy, but merely clarified existing law. The Director argues that the type of business arrangement created between plaintiff and its corporate parent always has been within the reach of Section 2 of the Corporation Business Tax Act, *N.J.S.A.* 54:10A–2.

### III.

 Our primary duty in reviewing a legislative enactment is free of doubt. We recently expressed that "[t]he role of the Court in statutory interpretation 'is to determine and effectuate the Legislature's intent.' " *Marino v. Marino,* 200 *N.J.* 315, 329, 981 *A.*2d 855 (2009) (quoting *Bosland v. Warnock Dodge, Inc.,* 197 *N.J.* 543, 553, 964 *A.*2d 741 (2009)). "[I]n performing this task, 'we look first to the plain language of the statute, seeking further guidance only to the extent that the Legislature's intent cannot be derived from the words that it has chosen.' " *Ibid.* (quoting *Pizzullo v. N.J. Mfrs. Ins. Co.,* 196 *N.J.* 251, 264, 952 *A.*2d 1077 (2008)). "[W]e begin by reading the words chosen by the Legislature in accordance with their ordinary meaning, unless the Legislature has used technical terms, or terms of art, which are construed 'in accordance with those meanings[.]' " *Ibid.* (internal citation omitted) (quoting *In re Lead Paint Litig.,* 191 *N.J.* 405, 430, 924 *A.*2d 484 (2007) (citing *N.J.S.A.* 1:1–1)). Our review is not unbounded, as "[w]e will not 'rewrite a plainly-written enactment of the Legislature [or] presume that the Legislature intended something other than that expressed by way of the plain language.' " *Ibid.* (quoting *O'Connell v. State,* 171 *N.J.* 484, 488,

795 *A.*2d 857 (2002) (second alteration in original)). It is only "if the plain language of a statute is not clear or if it is susceptible to more than one possible meaning or interpretation, [that] courts may look to extrinsic secondary sources to serve as their guide[.]" *Ibid.* (citations omitted).

■ The obvious point of departure, then, must be the statute itself. At all relevant times, *N.J.S.A.* 54:10A–2 provided that "[e]very domestic or foreign corporation ... shall pay an annual franchise tax ... for the privilege of doing business, [or] employing or owning capital or property ... in this State." Thus, in the first instance, the question becomes whether, even before the regulation was changed to add the example that plaintiff concedes governs its business, plaintiff's business arrangement with its corporate parent gives rise to liability under Section 2 of the Corporation Business Tax Act, *N.J.S.A.* 54:10A–2. We respond to that question in the affirmative.

The Tax Court concluded that "the statute itself ... expose[s plaintiff] to taxation." That conclusion is unassailable. Here, plaintiff entered into a business arrangement with its corporate parent whereby plaintiff would possess the intellectual property essential to its corporate parent's business operations, and the parent would license those intangibles from its own subsidiary for a price. Clearly, that arrangement was designed to minimize taxes wherever the corporate parent operated: it generated a deduction from the corporate parent's income for the sums the parent paid to the subsidiary as license fees, all the while either sheltering from taxation or procuring more favorable tax treatment to the subsidiary's income in the nature of license fees. The Tax Court reasoned that, in this instance, form would not trump substance, concluding that the use of intangible property for income-producing purposes in New Jersey renders that property's owner subject to taxation either as one who is "doing business, [or] employing or owning capital or property ... in this State."

*N.J.S.A.* 54:10A–2. From a straightforward plain language standpoint, no other conclusion is sensible.

A like result obtains if the relevant regulation is examined even before the 1996 addition of the example. That regulation defined, in broad strokes, what "doing business" in New Jersey would consist of for purposes of the corporation business tax, that is, "all activities which occupy the time or labor of men for profit[.]" *N.J.A.C.* 18:7–1.9(a). Based on that mandate, and following the procedures outlined in the Administrative Procedure Act, *N.J.S.A.* 52:14B–1 to –15, the Director adopted *N.J.A.C.* 18:7–1.9. The regulation further defined relevant, but not exclusive considerations in determining whether an activity constituted "doing business," *N.J.A.C.* 18:7–1.9(b), as well as, conversely, those activities that would not constitute "doing business." *See N.J.A.C.* 18:7–1.9(c) (setting forth four instances where conduct would not be considered "doing business" for corporate business tax purposes); *N.J.A.C.* 18:7–1.9(d) (limiting reach of corporation business tax to qualifying business engaged in "solicitation of orders for sales of its tangible personal property"); *N.J.A.C.* 18:7–1.9(e) (limiting corporation business tax liability to certain independent contractors).

■■■ An application of the non-exclusive factors to be considered in determining whether an entity is "doing business" in New Jersey, as codified in *N.J.A.C.* 18:7–1.9(b), leads in a straight, unbroken line to the conclusion that plaintiff was "doing business" in New Jersey sufficient to render its activities liable for New Jersey's corporation business tax. No doubt, the nature and extent of plaintiff's activities in New Jersey were obvious: plaintiff licensed its intellectual property for use in the manufacture and sale of products in New Jersey and elsewhere. It thus was plaintiff's property that was brought to and put into income-producing use in New Jersey. Further, those activities in New Jersey were continuous, frequent and regular. Although plaintiff maintained no offices in New Jersey, it employed no employees or representatives in New Jersey and its principal place of business

was located outside of New Jersey,[5] those absences do not overcome the irrefutable import of plaintiff's activities: that plaintiff was deriving income directly from New Jersey-based activities.[6]

Finally, even plaintiff concedes that, once the example that snugly fits plaintiff's circumstances was added to the regulation in 1996, all doubt as to plaintiff's liability for the New Jersey corporation business tax was removed. That example unequivocally provides that the owner of intellectual property who receives fees for the use of that property in New Jersey "is subject to the corporation business tax on its apportioned income as a result of its [intellectual property] licensing activities." *N.J.A.C.* 18:7–1.9(b). In sum, no matter where along the temporal continuum the tax is applied—either under the statute alone, under the regulation before the 1996 addition of an example, or after the example was added—the logical and inescapable conclusion remains that plaintiff's activities in New Jersey were subject to taxation under the Corporation Business Tax Act, *N.J.S.A.* 54:10A–1 to –5b.

■■■■■ In so concluding, we reject out of hand plaintiff's claim that its business arrangement with its corporate parent became subject to the corporation business tax only after the Director

---

[5] In this context, we place less value on these factors—as codified in *N.J.A.C.* 18:7–1.9(b)(2), (b)(4) and (b)(5)—because their relevance relates directly to the physical nexus or physical presence test, one which we have eschewed in respect of the imposition of income taxes, as opposed to sales or use taxes. *See Lanco, supra,* 188 *N.J.* at 383, 908 *A.2d* 176 (holding that Director "constitutionally may apply the Corporation Business Tax notwithstanding a taxpayer's lack of physical presence in New Jersey").

[6] It goes without staying that "a regulation promulgated by the Director must be upheld unless the taxpayer can demonstrate that the regulation is arbitrary, capricious, unduly onerous or otherwise unreasonable[,]" and that "[o]nly a regulation that is out of harmony with the statute will be invalidated by the court as exceeding delegated authority to interpret the law." *Vassilidze v. Dir., Div. of Taxation,* 24 *N.J.Tax* 278, 289 (2008) (citations and internal quotation marks omitted). By the same token, "[a] regulation within the fair contemplation of the delegation of the enabling legislation will be upheld." *Ibid.* (citations and internal quotation marks omitted).

adopted a regulatory example that clearly mirrored plaintiff's arrangement. That argument is premised on a fallacy, an unspoken but nonetheless incorrect assumption that tax liability somehow can flow from a regulatory change. That assumption flies in the face of the exclusive constitutional authorization to the Legislature of the power to tax. *See N.J. Const.* art. IV, § VI, ¶ 1 ("All bills for raising revenue shall originate in the General Assembly; but the Senate may propose or concur with amendments, as on other bills."). Although the Legislature may delegate its exclusive taxing power "to political subdivisions to defray local costs and expenses," *Warren County Cmty. Coll. v. Warren County Bd. of Chosen Freeholders,* 176 *N.J.* 432, 443, 824 *A.*2d 1073 (2003), the proposition that the taxing power can be expanded by the Executive Branch via the adoption of regulations is simply erroneous. The Director's exercise of his regulatory powers is circumscribed by the taxing authority in fact conferred by the Legislature. That said, the legislative intent behind the Corporation Business Tax Act is for the Director to give the tax its broadest reach constitutionally permissible. *See Roadway Express, Inc. v. Dir., Div. of Taxation,* 50 *N.J.* 471, 483, 236 *A.*2d 577 (1967). The Director's implementation of that legislative directive does not lie dormant unless and until a precise regulatory example is adopted pursuant to the Administrative Procedure Act. Rather, it is the words of the statute that control the Director's actions in enforcing the statute against this taxpayer and that define whether this taxpayer complied with the clear import of the Corporation Business Tax Act's words.

## IV.

The judgment of the Appellate Division is reversed, and the judgment of the Tax Court imposing liability on plaintiff under Section 2 of the Corporation Business Tax Act, *N.J.S.A.* 54:10A–2, for the years 1994 to and including 1996 is reinstated. The matter is remanded to the Appellate Division for plenary consideration of plaintiff's challenges to the imposition of the late filing and post-

tax amnesty penalties under *N.J.S.A.* 54:49–4 and *N.J.S.A.* 54:53–18(b), respectively. We do not retain jurisdiction.

*For reversal/reinstatement/remandment*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO and HOENS—7.

*Opposed*—None.